**Dominick A. SPADA**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services.**

Civ. A. No. 85–4429.

United States District Court,
E.D. Pennsylvania.

May 31, 1988.

Christina Barbieri, Philadelphia, Pa., for plaintiff.

Joan Garner, Philadelphia, Pa., for defendant.

### MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This action was brought under 42 U.S.C. § 405(g) (the "Act") seeking judicial review of a final decision of the Secretary of Health and Human Services ("Secretary"), denying plaintiff's claim for disability insurance benefits ("DIB"). Presently before the court are cross-motions for summary judgment. For the reasons which follow, we grant the motion of the Secretary and deny the motion of the plaintiff.

### PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 25, 1984 alleging disability due to a back condition (Tr. 67–70). The application was denied initially and on reconsideration. This denial was made after the Pennsylvania State Agency, upon evaluation of the evidence, found that plaintiff was not disabled within the meaning of the Act (Tr. 71, 74). The first Administrative Law Judge ("ALJ") before whom plaintiff initially appeared considered the case *de*

*novo,* and on December 17, 1984, determined that plaintiff was entitled to a period of disability commencing January 1984, but not prior thereto (Tr. 22–23). Thereafter, the Appeals Council denied plaintiff's request for review, so that the first ALJ's decision became final on July 23, 1985 (Tr. 4). Plaintiff then filed a complaint for the purpose of obtaining judicial review in this court. By order dated October 17, 1985, this court remanded the case to the Secretary for review of issues relating to the onset of plaintiff's impairments. The Appeals Council remanded the case to an ALJ, and on April 21, 1986 a supplemental hearing was conducted before a second ALJ. The ALJ concluded on July 1, 1986 that plaintiff retained the residual functional capacity for light work, and based upon plaintiff's age, education, work experience, 20 C.F.R. § 404.1569 and Rules 202.12 and 202.03, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, found plaintiff not disabled (Tr. 317–318). Thereafter, the Appeals Council re-remanded the case to the ALJ for presentation of expert testimony. Hearings were conducted and additional evidence was submitted and incorporated into the file. The ALJ then rendered a second decision, again denying plaintiff benefits *in toto* (Tr. 283–284). On December 4, 1987, the Appeals Council adopted the findings of the ALJ so that the Secretary's decision again became final. Subsequently, the parties to this action stipulated that plaintiff was disabled as of January 1984, but not prior thereto,[1] which stipulation was approved by this court on February 23, 1988.

## SCOPE OF JUDICIAL REVIEW

Our standard of review in this case is whether there is substantial evidence in the record to support the Secretary's decision. *Stunkard v. Secretary of Health and Human Services,* 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir.1986). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is more than a mere scintilla of evidence but may be less than a preponderance. *Stunkard,* 841 F.2d at 59.

A person seeking social security disability benefits must demonstrate that he suffers from "an impairment that prevents him from engaging in 'any substantial gainful activity' for a statutory twelve-month period." *Kangas v. Bowen,* 823 F.2d 775, 777 (3d Cir.1987) (quoting 42 U.S.C. § 423(d)(1) (1982)). He must show that there is a medically determinable basis for impairment. *Kangas,* 823 F.2d at 777.

A claimant may make such a showing in one of two ways. First, he can introduce medical evidence that he suffers from one or more of the serious impairments delineated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1987). If he can demonstrate that he suffers from one of the "listed" impairments, he is considered disabled *per se. Kangas,* 823 F.2d at 777. Second, a claimant can demonstrate that although he does not suffer from a "listed" impairment, he has an impairment severe enough that he can not engage in any "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). After careful review of the record, plaintiff's and defendant's motions and supporting memoranda, we find that in making the decision that plaintiff was not disabled before January 1984, the Secretary did consider all relevant factors and that the decision is supported by substantial evidence.

When reviewing a disability case, the ALJ must follow a five-step sequential decision-making process. *Santise v. Schweiker,* 676 F.2d 925, 927 (3d Cir.1982); *see* 20 C.F.R. § 404.1520. Initially, the ALJ ascertains whether the applicant is currently working; if so, the claim is denied. *Id.* at § 404.1520(b). Second, the

---

1. The only period of disability which is in dispute, therefore, is January, 1982, as plaintiff claimed in his application, to January, 1984.

ALJ determines whether the claimed impairment is "severe", by using medical evidence to establish whether plaintiff's impairment is of a magnitude sufficient to significantly limit his "physical or mental ability to do basic work activities"; if it is not, the claim is denied. *Id.* at § 404.1520(c). Third, the ALJ decides, again using only medical evidence, whether the impairment equals or exceeds in severity certain impairments described on Appendix 1 of the regulations; if it does, the claimant is automatically awarded disability benefits. *Id.* at § 404.1520(d). Fourth, the ALJ considers whether the applicant has sufficient "residual functional capacity"—defined as that which an individual can still do despite his limitations—to perform his past work; if so, the claim is denied. *Id.* at § 404.1520(c), see *Id.* at § 404.1520(a). Finally, the ALJ adjudicates on the basis of the claimant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other substantial gainful work within the economy. *Id.* at § 404.1520(f). If the ALJ finds that a claimant is disabled or is not disabled at any point in this process, the review is terminated. *Id.* at § 404.1520(a).

 Finally, in determining whether a claimant is capable of performing any substantial gainful employment activity, the ALJ must consider four elements of proof: (1) the objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education and work history. *Boyd v. Heckler*, 704 F.2d 1207, 1210 (11th Cir.1983).

## FACTS

Plaintiff, Dominick Spada, was born on October 6, 1929 (Tr. 32). He has a sixth grade education (Tr. 34) and work experience as a truck driver (Tr. 36). Mr. Spada alleges that he became disabled as of January 1982 as a result of a fall on the ice in 1978, which necessitated surgery and a nine (9) month absence from work, and an accident which occurred in the loading area

where he worked in December, 1981 (Tr. 359–360, 365).

At the hearing before the first ALJ plaintiff testified that he has not worked since January, 1982 (Tr. 38). Plaintiff testified that his job as a truck driver consisted of driving within a 300 mile radius and unloading and supervising the unloading of transported materials (Tr. 36). Although plaintiff was not responsible for loading the trucks, sometimes he would be required to carry cartons weighing approximately 30 to 70 pounds (Tr. 37). There were also times when plaintiff supervised the unloading and had to secure the load on a tow motor by putting his weight up against it (Tr. 37).

Plaintiff testified that he had to stop working as a truck driver when, following surgery to insert a bone graft in his neck in June, 1982, his treating physician, Dr. H. Warren Goldman, told him he could not return to work (Tr. 42). Plaintiff testified he was prescribed pain medications, which he still takes along with Tylenol, from time to time for pain (Tr. 43). Plaintiff stated that, after being told he could not return to work, he became depressed and eventually came under the care of Dr. Harold J. Byron, a psychiatrist (Tr. 373–374).

Plaintiff testified he is able to mow his lawn with a power mower once a week, as well as do light gardening, drive short distances and go deer hunting (Tr. 383–386). He stated that he helps his wife with a little cooking (Tr. 54), but experiences fatigue and tightness in his upper back when carrying and putting grocery bags away (Tr. 51). Plaintiff felt that his condition would prevent him from getting to or doing any job that required driving (Tr. 353). He also testified that he would need to find a job that allowed him to move constantly, but would be unhappy with an "inside" job (Tr. 63).

At the hearing of April 21, 1986, testimony was also received from Dr. Milton Alter. Dr. Alter testified that although plaintiff could not perform light work on a daily basis, he could do it "most of the time" (Tr. 419). He also stated that plaintiff was

capable of doing sedentary work day in and day out (Tr. 419).

At the June 8, 1987 hearing, Nancy Harter, a vocational expert, testified that, based on information presented by the ALJ, she believed there were a few light work jobs that plaintiff could perform (Tr. 440–448). Among them were driver, order clerk and arcade attendant (Tr. 489).

The medical evidence revealed that plaintiff was hospitalized on January 18, 1978. A lumbar myelogram demonstrated an extradural defect at L5–S1 (Tr. 113). Plaintiff was readmitted and had a lumbar laminectomy at L5–S1 on February 6, 1978 (Tr. 121). On May 20, 1980, plaintiff was hospitalized and a cervical myelogram revealed degenerative changes, particularly at 5–6 and 6–7 (Tr. 130). An anterior cervical disectomy was performed by Dr. Goldman on June 2, 1980. He reported that plaintiff's post-operative status was "almost back to normal". Dr. Goldman encouraged plaintiff to resume activities such as swimming, driving and light gardening and to consider returning to work. (Tr. 172). A follow-up report on October 30, 1980 stated that plaintiff's cervical spine x-rays were "perfectly normal", and, although the disc spaces were somewhat narrowed, there was no abnormal movement (Tr. 176).

Plaintiff returned to Dr. Goldman in January, 1982, following his accident at the loading dock. A cervical myelogram, performed on February 3, 1982, showed "degenerative changes, most marked at the C5–6 level" (Tr. 161). Dr. Goldman performed a second anterior cervical disectomy on the plaintiff on June 21, 1982. Dr. Goldman subsequently referred plaintiff to Dr. Jonathan J. Rogers, who reported that plaintiff's range of motion of the right shoulder was nearly normal and there was mild crepitation. He also stated that plaintiff's "right shoulder showed signs consistent with chronic rotator cuff impingement" and his neck exam was "unremarkable" (Tr. 202).

On December 31, 1982 Dr. William C. Bryers, plaintiff's family doctor, reported to Dr. Goldman that x-rays revealed degenerative changes in the lower cervical range

at C5, C6 and C7. He also noted increased sclerosis and "osteophytic spurs along the surfaces and borders with some attempt at bridging anteriorly and laterally." There also appeared to be a "mild decrease in the axial heights of C5 and C6 but no apparent break in the cortical margin" (Tr. 205).

Plaintiff underwent subsequent x-rays on August 23, 1983, which demonstrated "advanced hypertrophic discogenic degenerative change involving the lower cervical spine" (Tr. 207). Dr. Goldman reported that plaintiff had recurring neck and upper extremity pain, but that his examination remained unchanged (Tr. 229). He also noted plaintiff's depression, which was treated with Sinequan.

## DISCUSSION

The second ALJ found that, while plaintiff had cervical and lumbar spine impairments, mild anxiety and depression, they did not meet or equal the criteria for a finding of presumptive disability under the Regulations. The ALJ evaluated plaintiff's disability according to the required five-step analysis outlined in 20 C.F.R. § 404.1520. The ALJ initially determined that plaintiff had not been engaged in substantial gainful activity since January 16, 1982. Since plaintiff did not demonstrate that he suffered from an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ determined that he was not disabled per se.

The ALJ subsequently determined that prior to January, 1984, plaintiff had the residual functional capacity to perform light work. We conclude that the ALJ's findings regarding the January 1982—January 1984 time period are supported by substantial evidence. In February, 1982, plaintiff's treating physician, Dr. Goldman, reported that despite, "some cervical root compression on the right side at C5, 6" he believed plaintiff could get back to work (Tr. 179). Dr. Goldman later opined, following plaintiff's second anterior cervical disectomy, that there was a "reasonable possibility" that plaintiff may return to his job (Tr. 185). In December, 1982, Dr. Goldman only restricted plaintiff from engaging

in "any kind of physical labor" particularly no lifting of more than a few pounds, no bending, and no sitting for prolonged periods (Tr. 188). Finally, Dr. Goldman advocated plaintiff's participation in a construction job in March of 1983 as being both physically and emotionally beneficial (Tr. 189). In February, 1982 and in August, 1984 he noted plaintiff's depression, but offered no evidence of a disabling psychiatric impairment (Tr. 179, 190).

Since a residual capacity to perform light work was not applicable to plaintiff's past work, the ALJ proceeded to apply the medical-vocational tables set out in Appendix Z of the Regulations. The ALJ determined, based on plaintiff's age, education, work experience and capacity for a full range of light work, that plaintiff was not disabled. The ALJ found plaintiff capable of performing substantial gainful activities, pursuant to Rules 202.03 and 202.12. We find this conclusion to also be supported by substantial evidence.

Objective medical evidence and the opinions of plaintiff's physicians support the ALJ's findings. In January, 1982 plaintiff demonstrated a good range of motion about the cervical spine. There was minimal weakness of the right triceps muscle, with no diminution of the triceps reflex (Tr. 178). Electrodiagnostic studies in July, 1982 showed improvement in plaintiff's nerve conduction. There was no longer any evidence of a carpal tunnel and no active denervation in a radicular pattern (Tr. 199). Dr. Rogers observed in August, 1982 that plaintiff's range of motion in his right shoulder was nearly normal and his neck examination was unremarkable (Tr. 202). His condition was also unremarkable on November 4, 1982, and his discomfort had subsided with rest and aspirin (Tr. 204). In August of 1983 plaintiff again complained of neck and upper extremity pain, but Dr. Goldman's examination remained unchanged (Tr. 190).

## CONSIDERATION OF SUBJECTIVE COMPLAINTS

It is well established that pain in and of itself may be a disabling condition. *Tay-* *bron v. Harris,* 667 F.2d 412, 415 (3d Cir. 1981); *Smith v. Harris,* 644 F.2d 985, 988 (3d Cir.1981). In order to constitute a disability, an individual's subjective complaints of pain must be supported by objective medical evidence showing the existence of a physical impairment which could reasonably be expected to provide the pain. 42 U.S.C. § 423.

In the case *sub judice,* this court must determine whether the ALJ's decision on remand did consider the plaintiff's subjective complaints of pain and, if so, whether his decision to deny plaintiff's claim for DIB was supported by substantial evidence.

We find the ALJ's findings to be supported by substantial evidence. The ALJ concluded that plaintiff's allegations of some cervical and lumbar spine pain and limitation of motion and upper extremity pain were credible. The plaintiff's claim of constant, severe back pain and limitation of function were found not to be credible. Consideration of plaintiff's pain and exertional and non-exertional limitations was given, and it was concluded that they did not significantly compromise his capacity for a full range of light work.

There is corroborating medical evidence in the record that plaintiff maintained a nearly normal range of motion of the cervical spine throughout the period in question (Tr. 178, 202). The ALJ also noted that although degenerative changes of the spine are potentially painful, there was no medical evidence to support plaintiff's claim of disabling pain. Pain would have to be conveyed along the nerves emanating from the cervical nerve roots, however, there were no clinical signs or electrical evidence of disease resulting from the degenerating cervical spine (Tr. 281).

The ALJ concluded that the plaintiff's capacity for a full range of light work has not been significantly compromised by his exertional and non-exertional limitations. Therefore, his conclusion that plaintiff is not disabled is supported by substantial evidence. The motion of the plaintiff for summary judgment is DENIED. The mo-

tion of the defendant for summary judgment is GRANTED.