**Marian HUDSON, and All Persons Similarly Situated, Plaintiffs,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 85-2637.**

United States District Court, W.D. Pennsylvania.

May 31, 1989.

Robert N. Peirce, Jr., Pittsburgh, Pa., for plaintiffs.

Amy R. Hay, Ass't U.S. Atty., Pittsburgh, Pa. (George Davidson, Office of Gen. Counsel, Social Security Div., Dept. of Health and Human Services, Baltimore, Md., of counsel), for defendant.

## OPINION

ZIEGLER, District Judge.

Marian Hudson filed a claim for disabled widow's benefits alleging that she is disabled due to cervical spondylosis, bursitis of the left shoulder, degenerative joint disease of the lower back and knees, hiatal hernia, anemia, migraine headaches, high blood pressure and recurrent urinary tract infections. The Secretary concluded that plaintiff was not disabled because her impairments did not meet or equal the requirements of a listed impairment and denied her benefits.

Plaintiff is 63 years old and is the widow of a wage earner, who died fully insured on April 1, 1980. She has been receiving disabled worker's benefits "on her own earnings record" since February, 1975. R. at 256–59. On November 11, 1983, Dr. Lawrence Ellis, plaintiff's treating physician since October 22, 1975, reported the existence of anemia, cervical arthritis and spondylosis. R. at 367. Dr. Ellis opined that plaintiff's condition provided only a moderate limitation on bending, standing and lifting and a mild limitation on walking. R. at 369. On March 26, 1984, Dr. Ellis conducted a physical capacity evaluation of plaintiff and concluded that plaintiff could stand for two hours and sit for two hours in an eight hour day. R. at 371. No explanation for plaintiff's apparently deteriorating condition was provided.

Dr. Michael Culbya examined plaintiff on August 26, 1983 and made a diagnosis of arthritis, frozen left shoulder, symptomatic hiatal hernia, cervical spondylosis and anemia. He noted a history of migraine headaches, essential hypertension (controlled) and urinary tract infections. R. at 349. According to Dr. Culbya, range of motion for all joints, with the exception of plaintiff's left shoulder, was normal. R. at 348. Dr. Culbya also reported that a carcinoma of the colon appeared to have been cured surgically and "no longer poses a problem." *Id.*

Finally, Dr. John Yount examined plaintiff on February 21, 1985 and made a diagnosis of spondylosis of the cervical spine, bursitis of the left shoulder, trochanteric bursitis, degenerative joint disease of the lumbar spine and the knees, hiatal hernia and recurring cystitis and vitilgo. R. at 382. Dr. Yount concluded that plaintiff's "multiple joint problems cause her constant pain and disability and in my opinion preclude any type of full time work." R. at 384.

Plaintiff testified that she can stand for two hours, under stress, and sit for one hour. R. at 36–38. She spends her morning watching television and rests in the afternoon. R. at 37. She participates in very little activity and takes various medications, including darvoset for pain, clinerol, demoral for high blood pressure and iron tablets for anemia. R. at 41–43.

The Administrative Law Judge (the ALJ) concluded that the medical evidence established the existence of cervical spondylosis and status post carcinoma of the rectum, but that it did not establish that any of plaintiff's impairments or combination of impairments meet or equal the requirements of a listed impairment. Thus, the ALJ determined that plaintiff "was not under a 'disability'". R. at 13. The Appeals Council denied plaintiff's request for review, and the decision of the ALJ became the final decision of the Secretary. R. at 3–4.

On appeal, plaintiff raises the following issues: (1) whether the Secretary's failure to consider residual functional capacity and plaintiff's actual ability to work in determining plaintiff's disability violates the Social Security Act (the Act) and the Equal Protection Clause of the fifth amendment; (2) whether the Secretary's failure to consider the treating physician's opinions, plaintiff's complaints of pain and the combined effect of plaintiff's impairments in determining whether plaintiff can engage in any gainful activity violates Third Circuit case law; and (3) whether the Secretary's failure to define and explain why plaintiff's impairments do not equal the listed impairment violates the requirements of due process.

■ Before we address the merits of plaintiff's claims, we will address the motion of plaintiff to vacate the order of this court denying her motion for class certification. Plaintiff purports to bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure "on behalf of all widows denied Disability Benefits on the basis that his/her medical condition did not meet the exact requirements of the medical listing (20 C.F.R. 404.1560, 77, 78)." Third

Amended Complaint at ¶ 18. We denied plaintiff's motion for class certification on the grounds that, (1) the innumerable medical facts and factual situations that would be presented by the class as defined by plaintiff render this action ill-suited for class treatment and (2) a class action is not necessary to achieve the result sought by plaintiff because the effect of the judgment will operate as a judgment with regard to the proposed class, if plaintiff is successful on the merits and on appeal.

In her motion to vacate judgment, plaintiff asserts that she is not seeking individual determination of the class member's eligibility for widow's benefits; rather the class seeks a ruling that the Secretary's policy requiring a widow claimant to meet or equal the listings is inconsistent with the Act.

Plaintiff's argument does not persuade us to alter our conclusion that class certification is inappropriate. In Count II, plaintiff claims that the Secretary does not consider the treating physician's opinions, a claimant's complaints of pain and the combined effect of a claimant's impairments, even though the Act, regulations and Third Circuit case law all command the Secretary to consider these items. *See* 42 U.S.C. § 423(d)(5)(B) and *Gilliland v. Heckler,* 786 F.2d 178 (3d Cir.1986) (treating physician's opinions); 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. § 404.1528 and *Green v. Schweiker,* 749 F.2d 1066 (3d Cir.1984) (claimant's pain); 42 U.S.C. § 423(d)(2)(C), 20 C.F.R. §§ 404.1523–404.1526 and *Smith v. Schweiker,* 671 F.2d 789 (3d Cir.1982) (consideration of effect of combined impairments). Plaintiff's specific allegations cannot be redressed in a class action suit, or even in an individual suit, in the manner in which plaintiff has sought to present them. The Secretary typically recites in his decision that he has considered the treating physician's opinion, a claimant's complaints of pain and the combined effect of a claimant's impairments, and in fact, in plaintiff's case, the Secretary did consider these items. R. at 10–13. In effect, plaintiff alleges that the Secretary disregards the Act, regulations and case law even though

he recites that he has considered the appropriate items.

Unfortunately for plaintiff, a court cannot determine whether the Secretary actually is disregarding the law when he states that he is following it. Generally, once the Secretary applies the correct legal framework, the only issue for a reviewing court to address is whether the Secretary's decision is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). If plaintiff believes that the Secretary did not consider the items which he said he considered, plaintiff's only recourse is to appeal the Secretary's decision to a district court alleging that the Secretary's decision is not supported by substantial evidence. Plaintiff's allegation can be handled only in this manner and can be handled only on an individual basis given the multitude of factual differences present in each case. This claim is not typical of the claims of the class, and therefore, class certification would be inappropriate.

Moreover, plaintiff's allegations that the Secretary issues decisions that do not define or explain why a claimant's impairments do not equal the requirements of a listed impairment also cannot be addressed in a class action. The regulations and case law require the Secretary to make findings of fact and to give reasons for his decisions. 20 C.F.R. § 404.953; *Cotter v. Harris*, 642 F.2d 700 (3d Cir.1981). Further, unlike the last claim, plaintiff has raised an issue that can be answered directly; however, this issue cannot be answered with respect to the class as a whole. Whether the Secretary defines or explains why a claimant's impairments do not equal the requirements of a listed impairment can be answered only by examining each individual case. A class action resolution would not solve the problem that plaintiff contends exists in this case. Because plaintiff's claim by its nature would be different from the claims of other class members, we find that it is not typical of the claims of other class members. Thus, class certification is inappropriate, and we will deny the motion of plaintiff to vacate the order of this court.

Addressing the merits of plaintiff's claims, we have already alluded to our response to the second and third issues set forth above. The record in the instant case establishes that the ALJ not only considered the treating physician's opinions, plaintiff's complaints of pain and the combined effect of plaintiff's impairments, but also adequately explained why plaintiff's impairments do not equal the requirements of a listed impairment.

Plaintiff contends that her impairments meet the requirements of Listing 1.05 of the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4. This listing provides as follows:

C. Other Vertebrogenic disorders (e.g. herniated nucleus puplosus spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory reflex loss.

In concluding that plaintiff's impairments do not meet Listing 1.05, the ALJ noted that plaintiff suffers from muscle spasms, pain in her feet, shortness of breath and fatigue and summarized the physicians' reports, including the report of the treating physician. R. at 11–12. Nevertheless, the ALJ determined that there is no evidence of motor loss, sensory loss or significant limitation of range of motion of the spine. R. at 12. Further, the ALJ concluded that,

[t]he medical evidence shows that the claimant's conditions are not attended by clinical findings that meet or equal in severity the requirements of the Listing of Impairments.... The combination of claimant's impairments were considered by physicians of the State Agency. They concluded that the combination of claimant's impairments did not meet or equal the level of severity described in the Listing of Impairments. Since claimant has failed to establish additional evidence which would cast doubt upon the deter-

mination of such equivalency the [ALJ] finds no cause to disregard such determination. Therefore, it is the finding of the [ALJ] that the claimant's impairments do not meet or equal in severity the Listing of Impairments.

R. at 12–13.

The record establishes that the ALJ considered Dr. Ellis' reports, plaintiff's complaints of pain and the combined effect of plaintiff's impairments. Consequently, we find plaintiff's contentions that the ALJ failed to consider these items to be without merit. We will not address the issue whether, in light of this evidence, the ALJ's decision to deny benefits is supported by substantial evidence because plaintiff has not raised this issue.

■ As quoted above, the ALJ expressly stated the basis for his determination that plaintiff's impairments do not equal the requirements of a listed impairment. Plaintiff raises the issue concerning whether the ALJ's explanation satisfies the requirements of due process. We hold that it does.

Defendant argues that "at each step in the administrative process the Secretary complied with the notice standards set forth by the Supreme Court.... Therefore, plaintiff's allegations of vagueness as a denial of due process by the Secretary is not a valid constitutional challenge, and not supported by the plaintiff's actions in this case." Brief in Support of Motion for Summary Judgment at 26. We agree. The written notice given to plaintiff, including a copy of the ALJ's decision, reasonably apprised plaintiff of the action taken and the reasons for such action. In addition, plaintiff was afforded an opportunity to present her objections. The requirements of due process have been satisfied. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see also Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975).

■ Next, we will address plaintiff's argument that the Secretary's failure to consider residual functional capacity in determining her disability violates both the Act and the fifth amendment. We note that we have a limited role in reviewing claims under the Act. As previously stated, the findings and conclusions of the Secretary are conclusive if supported by substantial evidence. However, no presumption of validity attaches to the Secretary's determination of the proper legal standard to be applied in evaluating claims. *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *see also Axe v. Department of Health and Human Services,* 564 F.Supp. 789, 791 (E.D.Pa.1983).

The Act provides that, "[a] widow ... shall not be determined to be under disability ... unless his or her physical or mental impairment or impairments are of a level of severity which under the regulations prescribed by the Secretary is deemed sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B). The Act intentionally imposes a stricter standard of disability on the widow than on the wage earner. *See Zanoviak v. Finch,* 314 F.Supp. 1152, 1154–55 (W.D.Pa.1970); *see also Lewis v. Schweiker,* 720 F.2d 487, 488 (8th Cir.1983). Plaintiff, as a widow, must prove inability to engage in *any* gainful activity based solely on medical considerations. On the other hand, the wage earner must prove inability to engage in substantial gainful activity based upon medical and non-medical factors. *Smith v. Schweiker,* 671 F.2d 789 (3d Cir.1982). The specific question posed by plaintiff is whether residual functional capacity, which can be considered for a wage earner, is a factor which the Secretary must consider in determining whether plaintiff is disabled. We hold that it is not.

Plaintiff argues that the Act requires the Secretary to consider residual functional capacity in determining whether she is disabled. To assess properly plaintiff's claim, we must analyze the role residual functional capacity plays in determining wage earner disability. Residual functional capacity is defined as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). It is used to determine the type of work a claimant can do despite his or her impairments. The issue of residual functional

capacity is reached only if the Secretary finds that the wage earner's impairments do not meet or equal the requirements of a listed impairment. 20 C.F.R. § 404.1520(d)–(e); *see Spada v. Bowen,* 687 F.Supp. 188, 191 (E.D.Pa.1988). Such a finding implies that the wage earner can perform at least some gainful activity. Residual functional capacity is then used by the Secretary to determine how much gainful activity a wage earner can perform. 20 C.F.R. § 404.1520(d)–(e). Thus, residual functional capacity is not used to determine whether a wage earner can perform any gainful activity; it is relevant only after this determination is made. *See id.* § 404.1520(e); *Spada,* 687 F.Supp. at 191.

The only decision concerning widow disability which the Secretary must make is whether a widow's impairments meet or equal the requirements of a listed impairment. Thus, unlike the wage earner's claim, the question of disability ceases with the Secretary's determination of whether the claimant's impairments meet or equal the requirements. *See Honaker v. Heckler,* 603 F.Supp. 1308, 1309 (W.D.Va.1985). Given that residual functional capacity is not considered in determining whether a wage earner's impairments meet or equal the requirements of a listed impairment, it should not be considered when the claimant is a widow.

In other words, by definition, residual functional capacity can exist only if a claimant's impairments do not meet or equal the requirements of a listed impairment. It becomes a consideration only after the Secretary decides that the claimant's impairments do not meet or equal the requirements. Where the claimant seeks widow's disability benefits, the Secretary's analysis ceases after a determination of whether the widow's impairments meet or equal the requirements, hence residual functional capacity is not a factor to be considered.

Plaintiff argues that the decision of the Second Circuit Court of Appeals in *Tolany v. Heckler,* 756 F.2d 268 (2d Cir.1985), requires the Secretary to consider residual functional capacity in determining a wid-

ow's disability. The Second Circuit found the regulations unclear as to whether residual functional capacity should be considered in determining a widow's disability. The court first suggested that because the regulations do not specifically exclude residual functional capacity from consideration, as it did with age and educational and vocational factors, it should be considered. *Id.* at 271; *see* 20 C.F.R. § 404.1577. The court then suggested that the Secretary should consider residual functional capacity in determining whether a widow claimant's impairments meet or equal the requirements of a listed impairment. *Tolany,* 756 F.2d at 271. The court stated,

[i]t would be entirely understandable that benefits would be denied after a determination that a widow did not have an impairment equivalent to a listed impairment if that conclusion were based on a determination that the claimant's residual functional capacity left the claimant with adequate capacity to perform "any" gainful activity. On the other hand, if the claimant's residual functional capacity leaves that person unable to perform any such activity, then it is difficult to see how the impairment could fail to be the equivalent of some impairment on a list of what purports to be impairments "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a).

*Tolany,* 756 F.2d at 271–72.

We cannot agree with the Second Circuit's characterization of residual functional capacity. Residual functional capacity is an objective assessment of a claimant's ability to perform work which occurs after the Secretary determines that the claimant's impairments fail to meet or equal the requirements of a listed impairment. *See* 20 C.F.R. § 404.1520(d)–(e); *see also Dorf v. Bowen,* 794 F.2d 896 (3d Cir.1986). Under the regulations, a claimant who meets or equals the requirements of a listed impairment is deemed unable to perform *any* gainful activity. 20 C.F.R. § 404.1525(a). Because of the stricter standard that plaintiff, as a widow, must satisfy, the Secretary's evaluation of her claim ends here. The Secretary's finding that plaintiff's im-

pairments do not meet or equal the requirements of a listed impairment means that plaintiff is deemed able to work. Such a finding precludes an award of benefits. In the case of a wage earner, an evaluation of the claimant's residual functional capacity would be conducted to determine if the claimant can perform his past work. In conclusion, we hold that the Secretary's failure to consider residual functional capacity in determining plaintiff's disability does not violate the Act.

Next, plaintiff argues that the Secretary's failure to consider residual functional capacity violates the Equal Protection Clause. Plaintiff claims that residual functional capacity is impliedly considered in the listed impairments, but not considered if a claimant is asserting that her impairments equal a listed impairment. She further claims that two classes of claimants are created as a result of these different considerations: (1) those seeking to meet the listed impairments, and (2) those seeking to equal the listed impairments. Plaintiff's argument fails. Plaintiff misunderstands the purpose of residual functional capacity. As rehearsed, residual functional capacity is designed as an analytical tool to be used by the Secretary in assessing wage earner disability, not widow disability. It is not used, impliedly or expressly, to determine whether a claimant's impairment meets or equals the requirements of a listed impairment. Thus, the regulations do not create two classes of claimants, and the Secretary's actions do not violate the Equal Protection Clause.

In sum, plaintiff seeks to use residual functional capacity to solve a problem which she asserts exists in the procedure used to determine a widow's disability—that the Secretary fails to consider the functional limitations created by a claimant's impairments in determining whether a claimant's impairments meet or equal the requirements of a listed impairment. Residual functional capacity is useful only in the wage earner context. Thus, plaintiff's arguments concerning residual functional capacity and its application in cases involving widow claimants are misplaced.

Finally, plaintiff argues that the Secretary violated the Act when he failed to consider plaintiff's actual ability to work or plaintiff's functional limitations in determining that plaintiff's impairments do not meet or equal a listed impairment. Defendant disagrees arguing that the regulatory framework does consider a claimant's functional limitations. We first must determine whether the Act requires the Secretary to consider a claimant's functional limitations and, if so, whether the regulatory framework promulgated by the Secretary considers a claimant's functional limitations in a manner consistent with the purposes of the Act.

The purpose of the Act indicates that the Secretary should consider plaintiff's functional limitations in determining whether her impairments meet or equal a listed impairment. The disability provisions of the Act were intended to provide benefits to those who were unable to work. 1984 U.S.Code Cong. & Admin.News 697, 1373–1374; *see also Bowen v. Public Agencies Opposed to Social Security,* 477 U.S. 41, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986). With respect to disability of widows, Congress stated,

> The determination of disability in the case of a widow or widower would be based solely on the level of severity of the impairment.

> Determinations in disabled widow and widower cases would be made without regard to nonmedical factors such as age, education, and work experience, which are considered in disabled worker cases. Under this test, the Secretary of Health, Education and Welfare would by regulation establish the severity of impairment which may be deemed to preclude an individual from engaging in any "substantial gainful activity" (as opposed to "gainful activity" as provided in the house bill).

1967 U.S.Code Cong. & Admin.News 2834, 2883. Based on the legislative history of several social security amendments, as well as the express language of the Act, we think the focus of the question of disability is on plaintiff's ability to perform work.

See 1956 U.S.Code Cong. & Admin.News 3877, 3941–3944; 1984 U.S.Code Cong. & Admin.News 1373–1376. As such, the Secretary should consider plaintiff's functional limitations in determing whether plaintiff is disabled. At least one court agrees with our conclusion:

> The Act requires the Secretary to determine the level of severity of each individual [widow] claimant and then to establish by regulation or otherwise whether that level of severity precludes gainful activity. While Congress intended adjudication of [widow] disability claims to be governed by a tougher standard—*any* gainful employment as opposed to *substantial* gainful employment—and did not allow consideration of the individual's vocational factors, it cannot be concluded that Congress intended benefits to be denied without an adjudicatory inquiry into the extent of the impairment. Where functional analysis is required, either to determine the severity level of a single impairment or to measure the combined impact of multiple impairments, the Secretary's denial of benefits under current practice must fail.

*Marcus v. Bowen*, 696 F.Supp. 364, 379 (N.D.Ill.1988); *see also Zebley by Zebley v. Bowen*, 855 F.2d 67, 74 (3d Cir.1988), *cert. granted*, — U.S. —, 109 S.Ct. 2062, 104 L.Ed.2d 627 (May 16, 1989) ("In the final analysis, it is functional impairment which is meant to be evidenced by medical findings. It is *only* impaired ability to function which results in disability.")

Plaintiff argues that the Secretary should consider functional limitations whereas the government argues that the Secretary does consider such limitations. To resolve this dispute, we must examine the relevant rules and regulations. *See* 20 C.F.R. §§ 404.1577–404.1578 and Soc.Sec. Rul. 83–19.

■ The scope of review over an agency regulation or rule depends upon whether the rule or regulation is legislative or interpretive. *See Fmali Herb, Inc. v. Heckler*, 715 F.2d 1385 (9th Cir.1983). If the rule or regulation is legislative, it is binding on the courts and can be overturned only if the court finds that the agency's interpretation of the statute is arbitrary and capricious or constitutes an abuse of discretion. *National Latino Media Coalition v. F.C.C.*, 816 F.2d 785 (D.C.Cir.1987); *Baeder v. Heckler*, 768 F.2d 547 (3d Cir.1985); *State of Wisconsin, Dept. of Health v. Bowen*, 797 F.2d 391 (7th Cir.1986), *cert. denied*, — U.S. —, 108 S.Ct. 1495, 99 L.Ed.2d 879 (1988); *see also Zebley*, 855 F.2d at 72. If the rule or regulation is interpretive, it is not binding on the courts, and the courts are free to reject the interpretation. However, "the status conferred on an agency as the delegate of Congress and by its expertise often leads courts to defer to the agency's interpretation of its governing statute." *National Latino*, 816 F.2d at 788.

■ Two factors determine whether a rule or regulation is interpretive or legislative. First, if the rule or regulation modifies existing rights, law or policy or affects individual rights and obligations, it is legislative; if not, it is interpretive. *W.C. v. Bowen*, 807 F.2d 1502 (9th Cir.1987). Second, if the rule or regulation is promulgated pursuant to statutory authority, it is legislative. If it is issued without delegated authority to promulgate the rule, it is interpretive. *Id.; National Latino*, 816 F.2d at 788; *Cubanski v. Heckler*, 781 F.2d 1421 (9th Cir.1986).

■ Pursuant to these principles, the relevant regulations and rules, 20 C.F.R. §§ 404.1577–404.1578 and Soc.Sec.Rul. 83–19, are legislative. The Act provides that the "Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions...." 42 U.S.C. § 405(a). With respect to widow's disability, the Secretary is charged to promulgate regulations which explain the level of severity of an impairment necessary to preclude an individual from engaging in any gainful activity. 42 U.S.C. § 423(d)(2)(B). The regulations and rules were promulgated under these broad grants of authority; as such, they are legislative in nature and must be reviewed under an arbitrary

and capricious standard. *See Baeder*, 768 F.2d at 551; *Sprandel v. Secretary of Health and Human Services*, 838 F.2d 23 (1st Cir.1988); *McCuin v. Secretary of Health and Human Services*, 817 F.2d 161 (1st Cir.1987); *Zebley*, 855 F.2d at 72.

▮ Plaintiff argues that widow regulations and Social Security Ruling 83–19 (SSR 83–19) violate the purposes of the Act. The regulations provide as follows:

§ 404.1577 Disability defined for widows, widowers, and surviving divorced spouses.

To be entitled to a widow's or widower's benefit as a disabled widow, ... the law provides that you must have a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. The impairments must be of a level of severity to prevent a person from doing any gainful activity. To determine whether you are disabled, we consider only your physical or mental impairment. We do not consider your age, education and work experience. We also do not consider certain felony-related and prison-related impairments, as explained in § 404.1506.

§ 404.1578 How we determine disability for widows, widowers, and surviving divorced spouses.

(a) We will find that you are disabled and pay you widow's or widower's benefits as a widow, widower, or surviving divorced spouse if—

(1) Your impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any impairment shown there;

(2) Your impairment(s) meets the duration requirement.

(b) However, even if you meet the requirements in paragraphs (1)(a) and (2) of this section, we will not find you disabled if you are doing substantial gainful activity.

20 C.F.R. §§ 404.1577–404.1578.

These regulations are not inconsistent with the purposes of the Act. The widow's disability provision in the Act requires plaintiff, as a widow, to prove inability to perform any gainful activity. 42 U.S.C. § 423(d)(2)(B). The Act intends widow disability to be determined solely on the basis of the level of severity of plaintiff's impairments; age, education and work experience are not to be considered. 1967 U.S.Code Cong. & Admin.News 2883. Section 404.-1577 is consistent with those purposes and, in fact, mirrors much of the language of the Act. We hold that the Secretary did not act arbitrarily or capriciously in promulgating this regulation.

With respect to section 404.1578, the Act authorizes the Secretary to promulgate regulations which define the levels of severity of impairments which are to be "deemed sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B). The impairments listed in Appendix 1 are impairments which the Secretary has deemed to be sufficient to preclude an individual from engaging in any gainful activity. *See* 20 C.F.R. § 404.1525(a). Consistent with the purposes of the Act, section 404.1578 allows a finding of disability if plaintiff's impairments meet or equal the requirements of a listed impairment. We hold that the Secretary did not act arbitrarily or capriciously in promulgating this regulation.

▮ SSR 83–19 presents a more difficult problem to analyze because the parties disagree over the actual meaning of the ruling and the ruling is somewhat ambiguous. Plaintiff asserts that the ruling prohibits the Secretary from considering plaintiff's functional limitations. On the other hand, defendant asserts that the ruling permits consideration of plaintiff's functional limitations consistent with the Act. The ruling provides in pertinent part as follows:

Equivalency can be found under three circumstances:

1. A *listed* impairment for which one or more of the specified medical findings is missing from the evidence but for which other medical findings of equal or greater clinical significance and re-

lating to the same impairment are present in the medical evidence.

2. An *unlisted* impairment, in which the set of criteria for the most closely analogous listed impairment is used for comparison with the findings of the unlisted impairment.

3. A *combination of impairments* (none of which meet or equal a listed impairment), each manifested by a set of symptoms, signs, and laboratory findings which, combined, are determined to be medically equivalent in medical severity to that listed set to which the combined sets can be most closely related.

Medical equivalence may not be established when findings reflect lesser severity than listed criteria require (and there are no related findings of equal or greater medical significance).

As in determining whether the listing is met, it is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. The level of severity in any particular listing section is depicted by the *given* set of findings and not by the degree of severity of any single medical finding—no matter to what extent that finding may exceed the listed value.

The mere accumulation of a number of impairments also will not establish medical equivalence. When an individual suffers from a combination of unrelated impairments, the medical findings of the combined impairments will be compared to the findings of the listed impairment most similar to the individual's most severe impairment. The functional consequences of the impairments (i.e. RFC), irrespective of their nature or extent, *cannot* justify a determination of equivalence.

Generally, "when a decision turns on the meaning of words in a statute or regulation, the decision is one of law which must be made by the court." *Stissi v. Interstate and Ocean Transport,* 765 F.2d 370 (2d Cir.1985) (citing *Trust of Bingham v. Commissioner,* 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945)). *Accord State of*

*Minnesota by Noot v. Heckler,* 718 F.2d 852 (8th Cir.1983).

Plaintiff essentially argues that the ruling prohibits "an examination into the functional impact of every one of the claimant's impairments." Plaintiff's Brief in Support of Class Relief at 17. As such, plaintiff may be functionally unable to perform any gainful activity, but because the ruling prohibits the Secretary from assessing "overall functional impairment," plaintiff cannot be found disabled.

Defendant responds arguing that the Secretary does consider a claimant's functional limitations under the rubric of the ruling. First, defendant asserts that the portion of the ruling that discusses "functional consequences" and "R.F.C." only instructs the Secretary not to assess a claimant's residual functional capacity as part of the equivalence determination. Defendant argues that, "an unstructured assessment of general functional consequences is not adequate to establish equivalence or, therefore, to establish disability." Defendant's Reply to Plaintiff's Brief at 6. Next, defendant argues that the ruling allows the Secretary to consider a claimant's other functional limitations when he fails to meet a necessary medical finding in a listed impairment. Finally, defendant argues that plaintiff failed to raise allegations concerning SSR 83–19 in her complaint, and thus this court should be barred from ruling on this claim.

We agree with plaintiff that the ruling in some instances prohibits consideration of a claimant's functional limitations. Contrary to defendant's assertions, the ruling expressly prohibits consideration of "whether the listing is equaled on the basis of an assessment of *overall* functional impairment." No argument presented by defendant can circumvent the clear meaning of this sentence. Further, although functional limitations are considered with the framework of individual listed impairments when the issue is meeting the requirements of the listed impairment, functional limitations are not considered in the equivalence determination if the limitation is not specifically addressed in the listings. Defen-

dant's argument that an "unstructured assessment of general functional consequences" is inappropriate in an equivalence determination supports our conclusion. According to defendant, functional limitations are considered only when they are a necessary finding in a listed impairment; they are not considered once the decision is outside of the framework of the listed impairments. We hold that the ruling does not permit the Secretary to consider a claimant's functional limitation when that limitation is not covered in a listed impairment.

Finally, we believe defendant's arguments have no merit. The ruling does not restrict only consideration of residual functional capacity. In fact, in a manner inconsistent with defendant's earlier argument about residual functional capacity, the ruling seems to confuse the "term of art" residual functional capacity with the functional limitations caused by an impairment. Defendant's second argument is partially correct. As rehearsed, the ruling only permits consideration of functional limitations when they are a part of the listed impairment being compared. That the Secretary can examine other related medical findings of equal or greater medical significance does not mean that he is considering functional limitations. Defendant's third argument also fails. A close examination of plaintiff's Third Amended Complaint reveals that although she did not expressly identify SSR 83–19, plaintiff did allege the problems caused by SSR 83–18. *See, e.g.,* Third Amended Complaint at ¶¶ 23 & 27. In sum, we hold that SSR 83–19 prohibits the Secretary from considering plaintiff's functional limitations when the Secretary is determining whether plaintiff's impairments are equivalent to the requirements of a listed impairment.

As previously stated, we cannot overturn a legislative rule unless the ruling is arbitrary and capricious. We find that the Secretary's decision to limit consideration of plaintiff's functional limitations to those contained in a listed impairment is arbitrary and capricious as inconsistent with the purposes of the Act. The purpose of the Act is to provide benefits to individuals who are unable to work due to disability; failure to consider plaintiff's functional limitations runs counter to this purpose. *See Marcus v. Bowen,* 696 F.Supp. 364, 379–80 (N.D.Ill.1988); *see also Zebley,* 855 F.2d at 72–77. Consequently, we hold that the ruling violates the Act. We will remand this case to the Secretary for consideration of plaintiff's functional limitations in determining whether plaintiff's impairments meet or equal the requirements of a listed impairment.

A written order will follow.

### ORDER OF COURT

AND NOW, this 31st day of May, 1989,

IT IS ORDERED that the motion of plaintiffs to vacate judgment of this court denying the motion of plaintiffs for class certification be and hereby is denied;

IT IS FURTHER ORDERED that the above-captioned case be and hereby is remanded for consideration of plaintiff, Marian Hudson's, functional limitations in determining whether plaintiff's impairments meet or equal the requirements of a listed impairment contained in 20 C.F.R. Appendix 1 to Subpart P.