**Myrtle L. CARTY, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 86–0120–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

April 27, 1990.

C. Randall Lowe, Abingdon, Va., for plaintiff.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

The plaintiff has filed a motion to alter or amend this court's order of March 27 granting summary judgment to the defendant. For the first time her counsel has raised the issue of whether the Administrative Law Judge (ALJ) erred in not considering Mrs. Carty's residual functional capacity in determining whether she was eligible for benefits.

As the court stated in its memorandum opinion, a widow, to receive benefits, must demonstrate the presence of a disability under 42 U.S.C. § 423(d). Section 423(d)(2)(B) states that:

A widow ... shall not be determined to be under a disability ... unless ... her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in *any* gainful activity. (Emphasis added).

This is in contrast to § 423(d)(2)(A), applicable to wage earners, which requires only a

showing that the claimant is incapable of *substantial* gainful activity. The Act intentionally places a stricter standard of disability on widows [1] than it does wage earners. *Lewis v. Schweiker,* 720 F.2d 487, 488 (8th Cir.1983).

This court outlined the regulations governing widows' claims promulgated by the Secretary in *Honaker v. Heckler,* 603 F.Supp. 1308 (W.D.Va.1985), as follows:

Both 20 C.F.R. § 404.1501 *et seq.* and § 416.901 *et seq.* provide the pertinent regulatory framework. The general rules for evaluating disability are set forth in §§ 404.1520 through 404.1523 and §§ 416.920 and 416.923 respectively. These rules have commonly been referred to as the sequential evaluative process. That process includes, should the evidence so compel, a consideration of whether a claimant's impairment(s) is severe. 20 C.F.R. §§ 404.1520(c) and 404.1521; 20 C.F.R. § 416.920(c) and 416.921.

Carved out of the sequential evaluative process, however, are the considerations to be made in determining disability for widows, widowers and surviving divorced spouses. 20 C.F.R. § 404.1577 through § 404.1580. As stated, in order for a surviving widow to qualify, her impairment, either physical or mental, must reach a level of severity that prevents her from doing any gainful activity. 20 C.F.R. § 404.1577. A widow will be found disabled if her impairment(s) meets specific clinical findings that are set forth in the Secretary's Listings of Impairments, 20 C.F.R. § 404.1525, appendix 1, or constitute the medical equivalence of those set forth in the Listings. In addition, the impairment must meet the durational requirements of the Act. 20 C.F.R. § 404.1578. Therefore, the initial steps in the sequential evaluative process, i.e., determining whether the claimant is engaged in substantial gainful activity or has a severe impairment or combination thereof, are not determina-

---

1. § 423(d)(2)(B) applies to "a widow, a surviving divorced wife, a widower, or a surviving divorced husband." The court will use the term "widow" throughout its opinion for the sake of convenience.

tive considerations; the only consideration being whether the claimant's impairment(s) meets or equals the listing for the durational limit.

*Id.* at 1309.

■ As opposed to wage earners, widows must prove their inability to engage in any work activity under medical considerations alone. Wage earners must prove only their inability to engage in *substantial* gainful activity, and may use both medical and non-medical proof. *Hudson v. Sullivan,* 717 F.Supp. 340, 345 (W.D.Pa. 1989) *citing Smith v. Schweiker,* 671 F.2d 789 (3rd Cir.1982).

Counsel for the claimant has drawn the court's attention to *Kier v. Sullivan,* 888 F.2d 244 (2d Cir.1989), in which the Second Circuit held that the Secretary had to consider a widow's residual functional capacity before finding that she was incapable of performing any gainful activity. *Id.* at 247. *Kier* followed *Tolany v. Heckler,* 756 F.2d 268 (2d Cir.1985), in which the Second Circuit first suggested that something was amiss with the Secretary's method of evaluating widows' disability claims. The court set out the five-step procedure used by the Secretary to determine a wage-earner's disability as it was summarized in *City of New York v. Heckler,* 742 F.2d 729 (2d Cir.1984):

The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied. 20 C.F.R. §§ 404.1520(a), (b), 416.920(a), (b) (1983). If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in subpart P, app. 1, of the social security regulations, 20 C.F.R. §§ 404.-1520(d), 416.920(d). These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's conditions meets or equals the "listed" impair-

ments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e). If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." *Decker v. Harris,* 647 F.2d 291, 298 (2d Cir.1981); 20 C.F.R. §§ 404.-1520(f), 416.920(f). If not, benefits are awarded.

*Id.* at 732.

The court assumed that the first three steps in the sequential evaluation process for wage earners also applied to widows. All 20 C.F.R. § 404.1577 says, however, is that: "To determine whether you [a widow, widower, or surviving divorced spouse] are disabled, we consider only your physical or mental impairment. We do not consider your age, education and work experience." Section 404.1578 adds that: "We will not find you disabled if you are doing substantial gainful activity." Thus, it is clear that while steps one and three of the wage earner's sequential evaluation process are the same considerations applicable to widows' claims, this does not establish that the sequential process was intended to be applied to widows.

The Second Circuit concluded, impliedly in *Tolany, id.* at 271–2, and explicitly in *Kier,* 888 F.2d at 246, that the absence of any specific exclusion in the regulations the Secretary must consider residual functional capacity in determining whether a widow's impairments are medically equivalent to an impairment contained in the listings.

This court believes that the Second Circuit's holding is based on a fundamental

misunderstanding of the Secretary's regulations and an apparent misreading of the Social Security Act.

■ First, the Second Circuit's holding is based on the erroneous assertion that the sequential evaluation process for wage earners is partly applicable to widows' claims. While it is true that the use of this procedure is mandated in 20 C.F.R. § 404.1520, this section is captioned "evaluation of disability in general" and is clearly superseded with respect to widows' claims by §§ 404.1577 and 1578. The only questions to be answered in determining whether a widow is entitled to disability insurance benefits are: 1) whether the widow is performing substantial gainful activity, and 2) whether she has an impairment set forth in the listing of impairments or the medical equivalent thereof. The Second Circuit's attempt to import the sequential evaluation process used for wage earners and certain others to widows' claims is just not supported by statutory enactment, administrative regulations, or common sense.

Even if it were true that the sequential evaluation process should be used, in whatever form, this court cannot see the logic of requiring the Secretary to consider residual functional capacity.

Residual functional capacity is defined in 20 C.F.R. § 404.1545 as "what you can still do despite your limitations." Residual functional capacity

> [i]s not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do without your impairment. Then, using the guidelines in §§ 404.1560 through 404.1569 [which include consideration of age, education, and work experience], your vocational background is considered along with your residual functional capacity in arriving at a disability decision.

*Id.*

In other words, residual functional capacity cannot be considered in a vacuum. It must be considered along with the demand of the claimant's past relevant work in step four, *see* 20 C.F.R. § 404.1520(e), or with age, education, *and* past work as a part of the step five determination of the claimant's ability to do other work. Trying to determine disability from residual functional capacity alone is alien to the disability determination process. It is like trying to make a loaf of bread without eggs, yeast, and water.

Furthermore, the Second Circuit wants the Secretary to use residual functional capacity to determine whether or not a widow meets or equals the requirements of a listed impairment, but residual functional capacity has nothing to do with determining whether or not a *wage earner* meets the listings. *Hudson v. Sullivan,* 717 F.Supp. at 346. The sequential evaluation process for wage earners considers residual functional capacity only after it is determined that the claimant's impairments do not meet or equal the listings. The Second Circuit plan would twist the sequential evaluation of claimants, already inapplicable to widows, into an illogical parody of its intended structure.

Finally, it is reasonable for the Secretary to limit his inquiry to whether a widowed claimant meets the listings, without going on to determine residual functional capacity, because the listings, though originally promulgated for wage earner cases, were intended to define impairments which would prevent an adult, *regardless* of age, education, or work experience from performing *any*, not just "substantial," gainful activity. *Sullivan v. Zebley,* —— U.S. ——, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990). *See* 20 C.F.R. § 416.925(a). Therefore, a "finding that [a claimant's] impairments do not meet or equal the requirements of a listed impairment means that [he] is deemed able to work.... In the case of a wage earner, an evaluation of the claimant's residual functional capacity would [then] be conducted to determine if the claimant can perform his past work." *Hudson,* 717 F.Supp. at 347. But an inquiry into the claimant's past work is irrelevant if the claimant is a widow.

Even if all of the above factors did not exist, this court still believes *Kier* and *Tolany* to be misguided. *Kier* reports the language of 42 U.S.C. § 423(d)(2)(B) this

way: "The Act specifies that all widows with impairments at a 'level of severity ... sufficient to preclude an individual from engaging in any gainful activity' are entitled to benefits." 888 F.2d at 247. As pointed out earlier, the full text of the provision in question provides that widows with impairments at a "level of severity *which under regulations prescribed by the Secretary is deemed to be* sufficient to preclude an individual from engaging in any gainful activity" are entitled to benefits. The ellipsis conceals the clear Congressional delegation of authority to the Secretary to prescribe regulations of his choosing, in contrast to the more specific language of § 423(d)(2)(A). Furthermore, Congress' use of the word "deemed" obviously contemplates that the Secretary will not be using the full-blown evaluation technique practiced on wage earners. There was contemplated, in other words, a short form for determining widows' disability, and the Secretary will be doing the deeming.

In addition to the express language of § 423(d)(2)(B), the Supreme Court has pointed out that the Social Security Act expressly gives the Secretary rule making power in 42 U.S.C. § 405(g). *Sullivan v. Zebley*, 110 S.Ct. at 888, n. 2. In cases of such statutory delegations, "review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." *Id.* at 890, *quoting Heckler v. Campbell*, 461 U.S. 458, 466, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983). The Court also quoted the following language from the leading case of *Chevron U.S.A., Inc., v. Natural Resources Defense Council*, 467 U.S. 837, 843–4, 104 S.Ct. 2778, 2781–2, 81 L.Ed.2d 694 (1984): "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to evaluate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."

Given the language of the statute, it can hardly be said that anything about the Secretary's regulations are manifestly contrary thereto, nor are they capricious or arbitrary. One does not have to wholeheartedly agree with the Secretary's regulations to reach this conclusion. In some ways they might be better designed. But they do not violate the Congressional grant of authority to the Secretary to make regulations. As the *Chevron* decision put it, "the court does not simply impose its own construction on the statute" when Congress has "not directly addressed the precise question at issue." 467 U.S. at 843, 104 S.Ct. at 2782. It appears to this court that the Second Circuit is indulging in precisely the sort of administrative micromanaging that the Supreme Court was trying to move away from in *Chevron*.

For all of the above reasons, the plaintiff's motion to alter or amend will be denied. An appropriate Order will enter this day.