Shirley E. HELMS, Plaintiff,

v.

Margaret M. HECKLER, Secretary, United States Department of Health and Human Services, Defendant.

No. C–C–83–345–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 13, 1983.

Harry B. Crow, Jr., Monroe, N.C., for plaintiff.

Richard S. Poe, Asst. U.S. Atty., Charlotte, N.C., for defendant.

## ORDER

McMILLAN, District Judge.

Plaintiff Shirley E. Helms applied for widow's disability benefits on February 3, 1982, and her application was denied by the Secretary of Health and Human Services. After a hearing before an administrative law judge and an appeal to the appeals council, plaintiff brought this action to review the Secretary's determination that she is not a disabled widow. 42 U.S.C. § 405(g).

The case was heard on September 8, 1983, on parties' cross motions for summary judgment.

## FINDINGS OF FACT

Plaintiff is a 56-year-old mentally retarded woman who has never worked outside the home. Her physical and mental restrictions include illiteracy (Tr. 76, 88, 93); a speech impediment (Tr. 76, 90); poor memory (Tr. 76, 79, 89); a physical tremor with constant head bob (Tr. 77, 93); nervous instability (Tr. 78, 79, 86, 87, 89, 94); and an inability to sustain normal social interaction (Tr. 76, 87, 89).

There is ample medical evidence before the court and the medical reports do not conflict. On March 6, 1982, Dr. Catherine Schwartz diagnosed plaintiff as having emotional problems and neurologic findings consistent with a cerebellar disease or Parkinson-like syndrome. On March 10, 1982, Dr. Alexander B. Snyder reported that plaintiff's nervousness and anxiety prohibited her from functioning normally with people for more than ten minutes, and that plaintiff was unable to work. On April 9, 1982, Dr. O.B. Starnes (Psy.D.) diagnosed plaintiff as suffering from a progressive neurological deterioration, indicating a borderline to severe organic brain syndrome. He also gave the opinion that plaintiff would be unable ever to work. Dr. Starnes administered an intelligence test to plaintiff on which she scored 76 on the verbal scale and was unable to complete the performance scale, or second half of the test,

due to extreme agitation. Her verbal score was in the fifth percentile.

On April 10, 1983, Mrs. Helms was examined by Dr. David B. Palmer, associated with the North Carolina Disability Determination Section. Dr. Palmer reported that Mrs. Helms did not have a clear understanding of why she was being examined. In his comments Dr. Palmer stated that plaintiff could not respond appropriately to or tolerate work pressures, nor adapt emotionally to work. Dr. Palmer was uncertain as to whether plaintiff could perform routine, repetitive tasks without undue supervision.

The administrative law judge noticed plaintiff's visible tremor, and reiterated the medical findings, but found that none of plaintiff's impairments met the level of severity required by Appendix 1.

## CONCLUSIONS OF LAW

The Secretary's decision is not supported by substantial evidence and will be reversed.

The Social Security Act provides that a widow is eligible for disability benefits if her physical or mental impairments are "of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B). The Secretary's regulations governing the medical criteria for widows' disability determinations are set forth in the Listing of Impairments, 20 C.F.R., Subpart P, Appendix 1. A widow will be considered disabled, and unable to engage in any gainful activity, if her impairment is found in the Listing of Impairments, or if her condition is the medical equivalent of a listed impairment. 20 C.F.R. § 404.1578(a). The Secretary must also consider whether the combination of several impairments which do not meet the specific criteria of the listed impairments constitutes the medical equivalent of a listed impairment. *Id.*

The Secretary's determination of widows' benefits under the Social Security Act differs from the determination of wage earn-

ers' benefits. To be considered disabled under the Act, a widow must be precluded by her impairments from performing any gainful activity, while a wage earner must only be precluded from performing any *substantial* gainful activity. 42 U.S.C. § 423(d)(2)(A). A widow's inability to engage in any gainful activity is determined solely on the basis of whether her physical and mental impairments meet the criteria set forth in Appendix 1. 20 C.F.R. § 404.-1577. By contrast, the Secretary must consider such non-medical factors as age, education and work experience in determining whether a wage earner is entitled to disability benefits. 20 C.F.R. § 404.1560(b)(1). *See, Rodriguez v. Secretary of Health & Human Services,* 647 F.2d 218 (1st Cir. 1981); *Smith v. Schweiker,* 671 F.2d 789 (3d Cir.1982); *Paris v. Schweiker,* 674 F.2d 707 (8th Cir.1982).

The Secretary's regulations define "gainful work activity" as "work activity that you do for pay or profit," and "the kind of work usually done for pay or profit, whether or not a profit is realized." § 404.-1572(b). "Substantial work activity" is defined as "work activity that involves doing significant physical or mental activities." § 404.1572(a).

■ The difference in wording between the "gainful activity" standard for widows and the "substantial gainful activity" standard for wage earners does *not* authorize the Secretary to impose a harsher burden on widows than on wage earners who wish to establish that their impairments meet the criteria of Appendix 1. Instead, the regulations reflect the Secretary's determination that if an applicant for disability benefits meets the criteria of Appendix 1, she will be considered disabled, and unable to engage in gainful activity. If a widow fails to meet the criteria of Appendix 1, or of its medical equivalents, she will be denied benefits. If a wage earner fails to meet those same criteria, she will be given an added opportunity to establish that she is still precluded from engaging in *substantial* gainful activity. *Hall v. Harris,* 658 F.2d 260 (4th Cir.1981).

■ The only question before the court is whether the Secretary's determination that plaintiff's impairment did not meet the level of the listed impairments of Appendix 1 is supported by the record. The Secretary's denial of widow's disability benefits cannot be upheld if it is not supported by substantial evidence. *Blalock v. Richardson,* 483 F.2d 773 (4th Cir.1972). Substantial evidence is that "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'." *Id.* at 776, *quoting Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966).

The Secretary provided *no* evidence in this case that the plaintiff is able to engage in gainful activity. The only conflicting evidence in the record concerns whether plaintiff would be able to handle her own benefits, or whether she would require a guardian to be appointed for this purpose (Tr. 90; 96). All of the examining physicians who were requested to give an opinion as to whether plaintiff could work stated that she could not work (Tr. 77; 87; 90; 94).

■ The medical evidence in this case overwhelmingly supports a finding that plaintiff is disabled by neurological impairments, as listed in section 11 of Appendix 1, and by mental impairments, as listed in section 12 of Appendix 1.

Section 11.06 lists the following neurological impairment:

11.06 *Parkinsonian syndrome* with the following signs: Significant rigidity, brady kinesia, or tremor in two extremities, which, singly or in combination, result in sustained disturbance of gross and dexterous movements, or gait and station.

Dr. Schwartz reported that plaintiff "has poor ability to do tandem walk with no change with eyes opened or closed"; that plaintiff's "gait is wide based"; and she made "[n]eurologic findings which would be

consistent with possibly a cerebellar disease or Parkinson-like syndrome" (Tr. 80). Dr. Schwartz noted a head tremor and an intention tremor. Dr. Palmer noted an intention tremor in plaintiff's hands, and a head tremor.

The administrative law judge stated that "plaintiff's tremor was readily apparent at the hearing" (Tr. 9).

Section 12.02 lists chronic or organic brain syndrome as a severe impairment:

12.02 *Chronic brain syndromes* (organic brain syndromes). With both A and B:

A. Demonstrated deterioration in intellectual functioning, manifested by persistence of one or more of the following clinical signs:

1. Marked memory defect for recent events; or

2. Impoverished, slowed, perseverative thinking, with confusion or disorientation; or

3. Labile, shallow, or coarse affect;

B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

Dr. Starnes diagnosed plaintiff as suffering from a borderline to severe organic brain syndrome. He further noted extreme memory difficulties and a speech impediment (Tr. 89). Dr. Schwartz noted that plaintiff was easily upset and cried upon examination (Tr. 79). Plaintiff's intelligence test had to be discontinued because she was too nervous and agitated to answer further questions. Dr. Snyder noted that plaintiff "[c]an't function [around] people for more than ten minutes" (Tr. 87). Plaintiff does little or no housework, no yard work, no shopping, walks only as far as her mailbox, and does not drive a car (Tr. 93). Her only social interaction consists of occasional visits with her children (Tr. 9).

Plaintiff's I.Q. is 76 (this score is dubious, since plaintiff could not complete the test, but the court will accept as an approximation of plaintiff's true score), or seven points too high for her to qualify as mentally retarded under the listed impairments.

Section 12.05. However, this score indicates significant mental retardation, and the Secretary should have relied on it for a determination that even if plaintiff's individual impairments failed to meet the exact specifications of the listed impairments, the combination of her impairments rendered her disabled under the Social Security Act. 20 C.F.R. § 404.1522.

Although the widow's disability sections of the Social Security Act are more restrictive than the other disability provisions of the Act, they must still be construed within reason. Plaintiff is clearly incapable of sustaining her own daily needs; it is impossible to see how she could perform "the kind of work usually done for pay or profit." The Secretary is not required to demonstrate the existence of jobs which the plaintiff can perform, but she is still required to rest her decision on some evidence that plaintiff's impairment does not preclude her from engaging in any gainful activity. Such evidence has not been produced.

Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED:

1. That the Secretary's decision is REVERSED.

2. That the Secretary is hereby directed to grant plaintiff benefits consistent with this opinion.