Juanita Garcia **GARRIGA**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant.

Civ. No. 82–2636(PG).

United States District Court,
D. Puerto Rico.

Jan. 29, 1986.

Rafael Lizardi Piñeiro, Caguas, Puerto Rico, for plaintiff.

Wanda Rubianes Collazo, Asst. U.S. Atty., Hato Rey, Puerto Rico, for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

On May 17, 1983, this Court remanded the case to the Secretary of Health and Human Services (the Secretary) for further administrative action. On September 16, 1983, the administrative law judge (ALJ) rendered his decision denying plaintiff's claim on the ground that she was not disabled under 42 U.S.C. § 423(d)(2)(B).* The decision was adopted by the Appeals Council on December 3, 1983 (Tr. 4).

Section 202(e) of the Social Security Act (the Act), 42 U.S.C. § 402(e) provides for insurance benefits to be awarded to widows who qualify. The statute, in its relevant part, reads as follows:

(1) The widow (as defined in section 416(c) of this title) and every surviving divorced wife (as defined in section 416(d) of this title) of an individual who died a fully insured individual, if such widow or surviving divorced wife—

\*   \*   \*   \*   \*   \*

(B)(i) has attained age 60, or (ii) has attained age 50 but has not attained age 60 and is under a disability (as defined in section 423(d) of this title) which began before the end of the period specified in paragraph (4) ... shall be entitled to a widow's insurance benefit....

Plaintiff was born on February 27, 1922 (Tr. 10, 122). Under section 402(e)(1)(B)(i) she would qualify for widow's insurance benefits from February 27, 1982, on, regardless of whether or not she is disabled. Plaintiff's degree of disability is an issue only for the period between October 31, 1979, and February 26, 1982. The scope of this decision is limited accordingly.

The sole question to be addressed by this Court is whether the judgment of the ALJ is supported by substantial evidence. 42 U.S.C. § 405(g); *Solis v. Secretary of Health, Education and Welfare,* 372 F.Supp. 1223, 1224 (D.P.R.1973).

---

* 42 U.S.C. § 423(d)(2)(B) reads as follows:

(2) For purposes of paragraph (1)(A)—

\*   \*   \*   \*   \*   \*

(B) A widow, surviving divorced wife, widower, or surviving divorced husband shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.

The requirements for a widow to qualify for disability benefits are very stringent, more so than those for wage-earners. 42 U.S.C. § 423(d)(2); *Rodriguez, supra,* at 220; *Muñiz v. Secretary of Health and Human Services,* 587 F.Supp. 1000, 1001 (D.P.R.1984). In order to qualify for disability benefits, a widow must show she suffers from mental and/or physical impairment severe enough to prevent her from engaging in "any gainful activity." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.-1577. Moreover, in evaluating a widow's claim only the medical evidence may be considered; factors such as age, education and work experience will not be taken into account. 20 C.F.R. §§ 404.1577, 404.1578; *Muñiz, supra,* at 1001. This evaluation is made by comparing the medical impairments of the defendant with a list of impairments in Appendix 1 to 20 C.F.R. §§ 404.1501 to 404.1599. If the claimant suffers from any impairments listed in Appendix 1, or their equivalent, she is qualified for benefits.

The main purpose of the medical listings on Appendix 1 is to enable officers evaluating a claim to base their decision solely on the medical evidence before them. Even if none of the claimant's impairments by itself equals any of the impairments listed, the claimant may qualify for benefits if the combination of those impairments prevents her from engaging in "any gainful activity." 20 C.F.R. § 404.1526; *Smith v. Schweiker,* 671 F.2d 789, 791 (3rd Cir.1982). The term "gainful activity" is defined in 20 C.F.R. § 404.1572(b) as follows:

Substantial gainful activity is work activity which is both substantial and gainful. . . .

b) *Gainful Work Activity.* Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay, a profit whether or not a profit is realized.

In the administrative record there are reports from various medical sources. There is also the opinion of Dr. Beltrán, a cardiologist who evaluated all the reports from the other doctors and hospital at the request of the agency and who testified at the *de novo* hearing.

Dr. Diez Rivas examined plaintiff on May 22, 1981, having begun treating her on May 19, 1980. He diagnosed hypertension, left ventricular hypertrophy, obesity, varicose veins, anxiety state and stasis dermatitis on both ankles (Tr. 109–110). Dr. Diez further certified that plaintiff could not work due to her hypertension (Tr. 115, 116).

Dr. Vizcarrondo evaluated the tests performed on plaintiff on May 19, 1981, at the request of Dr. Diez. He concluded that the EKG test revealed normal tracings, and the chest X-rays revealed mild cardiomegaly. He also stated that the stasis dermatitis of the lower legs was caused by varicose veins and that plaintiff's cardiovascular condition was not significant (Tr. 117). Dr. Vizcarrondo did not examine plaintiff.

Dr. Casado issued three medical certificates. The first one, dated June 29, 1981, stated that plaintiff suffered from varicose veins, congestive heart failure, lumbo-sacral arthritis, hypertension and obesity (Tr. 118). On September 5, 1981, Dr. Casado issued a second certificate in which he made a more extensive diagnosis. He further recommended that plaintiff abstain from work because she was disabled (Tr. 130). Dr. Casado issued a third certificate on September 15, 1981, stating that plaintiff suffered from left congestive heart failure with hypertension. The chest X-ray conducted on May 15, 1981, indicated right and left ventricular enlargement with cardiomegaly. The physical examination conducted by Dr. Casado revealed edema on both legs and congestion of the jugular veins (Tr. 146). Her high blood pressure was 220/110.

Dr. Jiménez, a psychiatrist, examined plaintiff on September 1, 1981. He diagnosed a depressive disorder and anxiety disorder with hysterical manifestations of a moderate severe type. He found plaintiff unable to perform any type of substantial activity (Tr. 139, 140). Dr. Calzada, an ophtalmologist who treated plaintiff from July 25, 1980, to September 1, 1981, diag-

nosed hypermetrophy, senile cataracts incipient in her right eye, and nasal pterygium, small, on both eyes. Her eyesight was 20/400 on her right eye, 20/200 on her left, corrected by eyeglasses to 20/90 and 20/40, respectively.

The plaintiff was treated between August 20–24, 1982, in the Saint Mary of Nazareth Hospital Center at Chicago. The final diagnosis was mild essential hypertension and sick sinus rhythm with cardiac arrhytmia and bradycardia (Tr. 166). A stress test showed a moderate exercise intolerance for a 60-year old female. A cardiologist suggested that plaintiff should undergó a cardiac catheterization, but plaintiff requested not to have this done due to an emergency at home. *Id.* The hospital recommended that plaintiff's activities be restricted. *Id.*

Dr. Beltrán, a well-qualified cardiologist, made an evaluation of all the medical evidence during the hearing. He had never examined the plaintiff. He stated that after studying all the medical reports and tests, neither any of plaintiff's impairments nor the combination of them equals or surpasses any of the impairments listed in Appendix 1 (Tr. 10, 67).

It is apparent from the ALJ's opinion that in making his decision to deny plaintiff's claim he relied mostly on Dr. Beltrán's evaluation, Dr. Vizcarrondo's analysis and the results of the tests performed at the Saint Mary of Nazareth Hospital Center in Chicago. We hold that in light of all the evidence present in the administrative record the judgment by the ALJ was not supported by substantial evidence.

Neither Dr. Beltrán nor Dr. Vizcarrondo examined plaintiff. They based their opinion solely on the medical reports that were before them at the time. On the other hand, doctors Diez, Casado and Jiménez personally treated plaintiff and stated their opinion that plaintiff was unable to work. Ordinarily the opinion of a treating physician is entitled to more weight than that of a non-treating physician. *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir.1983).

We have held that the expert opinion of a treating physician as to the existence of a disability is binding on the fact finder unless contradicted by substantial evidence to the contrary. *López v. Secretary of Health and Human Services*, 581 F.Supp. 698, 700 (D.P.R.1984). Neither Dr. Beltrán nor Dr. Vizcarrondo contradict the opinion stated by plaintiff's treating doctors that she cannot work. Furthermore, the results of the tests performed on plaintiff at the hospital did not prevent the doctors from recommending restricted activity of plaintiff and a cardiac catheterization.

Second, the medical evidence clearly shows that plaintiff is unable to engage in any gainful activity. As we have stated before, gainful activity is that which is usually done for pay or profit. Though the Secretary is not required to demonstrate the existence of jobs which plaintiff may perform, she is still required to rest her decision on some evidence that plaintiff's impairment does not prevent her from engaging in any gainful activity. *Helms v. Heckler*, 572 F.Supp. 259, 262 (W.D.N.C. 1983).

On Dr. Casado's evaluation of plaintiff, dated June 29, 1981, it is stated that plaintiff can stand for only 1–2 hours and cannot bend, squat or ambulate. Plaintiff has stated that she is usually unable to perform housework chores, which her daughter-in-law does for her (Tr. 49–49). Based upon all of the foregoing, we hold that the judgment of the ALJ denying plaintiff's claim for widow's disability benefits is not supported by substantial evidence.

Accordingly, we reverse. The Secretary shall determine plaintiff's period of eligibility for benefits and the amount thereof for the period between October 31, 1979, and February 26, 1982. The Secretary shall further determine whether plaintiff is receiving the benefits she is entitled to under 42 U.S.C. § 402(e)(1)(B)(i).

IT IS SO ORDERED.