**Paul C. COOK, on Behalf of Calvin A. COOK, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 89–CV–73751–DT.**

United States District Court,
E.D. Michigan, N.D.

Sept. 6, 1990.

Bernard Casper, Gaylord, Mich., for plaintiff.

Michael Hlunchaniuk, Asst. U.S. Atty., Bay City, Mich., for defendant.

## OPINION AND ORDER REJECTING MAGISTRATE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

This matter is before this Court on the Report and Recommendation of Magistrate Steven D. Pepe, filed January 22, 1990. The case involves the Plaintiff's application for Social Security widower's disability benefits which was denied by the Defendant Secretary after a hearing before Administrative Law Judge Bruce S. King (the "ALJ") on October 3, 1988. After the conclusion of the hearing, the ALJ determined that the Plaintiff was not disabled within the meaning of Section 223(d)(2)(B) of the Social Security Act, 42 U.S.C. Section 423(d)(2)(B).

The Plaintiff timely filed the instant case to obtain judicial review of the ALJ's adverse determination.[1] Both the Plaintiff and the Defendant Secretary have filed their respective motions for summary judgment which were referred to Magistrate Pepe for his report and recommendation.

1. Plaintiff Calvin Cook died after the ALJ's adverse determination, and the instant action was brought by his son, Paul Cook, to collect the disability payments Calvin Cook would have been entitled to receive during his lifetime. All further references herein to the "Plaintiff" signify either Calvin Cook, deceased, or Paul Cook, his son, as reflected in the context in which the term is used.

## I. ADMINISTRATIVE PROCEEDINGS

The Plaintiff claimed in his initial application that he is disabled due to left knee surgery conducted on March 14, 1985, back pain, and high blood pressure. (Transcript, p. 77). The hypertension, according to the medical evidence, was treated with medication with mixed results. (Transcript, pp. 98, 114, 116). The medical evidence in the record also indicates that the Plaintiff suffered from recurring migraine headaches which were relieved, at least in part by Fiorinal and Bellergal. (Transcript, pp. 90–93).

The ALJ's final decision, of which the Plaintiff now seeks judicial review, is dated October 31, 1988. In reaching the conclusion that the Plaintiff was not disabled, the ALJ made the following factual findings:

1. The [Plaintiff] was born on Mar. 1, 1926.

2. The [Plaintiff] is the widower of the wage earner, who died fully insured on April 15, 1987, and the [Plaintiff] is not married.

3. The period during which the [Plaintiff] must establish that he is under a disability extends through March 31, 1991.

4. The medical findings shown in the medical evidence of record establish the existence of a left knee condition, headaches, elevated hypertension, complaints of back pain, and history of bilateral carpal tunnel syndrome.

5. While the [Plaintiff's] testimony appeared sincerely given, the medical evidence of record does not establish that the [Plaintiff's] impairment(s) has specific clinical findings that are the same or equal in severity as those for any impairment in the Listing of impairments in Appendix 1 (20 C.F.R. 404.1525).

6. The medical evidence of record does not establish that the claimant has any impairment or combination of impairments which is medically equivalent to an impairment listed in Appendix 1 (20 C.F.R. 404.1526).

7. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. 404.1578).

(Transcript, p. 19).

In addition to the above, the ALJ specifically "determined that the claimant's headaches are not of the level of severity reasonably expected to result in total disability." (Transcript, p. 17).

## II. THE PLAINTIFF'S CLAIMS OF ERROR

In his brief in support of his motion for summary judgment, the Plaintiff essentially argues that the ALJ improperly relied exclusively on the Listing of Impairments set out in Appendix 1, as required by 20 C.F.R. 404.1578, to determine whether the Plaintiff was disabled. It is important to note that the Plaintiff apparently does not dispute the ALJ's determination that the Plaintiff's impairments do not meet the Listed Impairments. Instead, the Plaintiff argues that the ALJ should have pursued the analysis beyond whether the Plaintiff's conditions met one or more of the listed impairments and should also have considered the Plaintiff's residual functioning capacity. In so arguing, the Plaintiff urges the Court to invalidate 20 C.F.R. Section 404.1578[2] and Social Security rulings promulgated by the Secretary of Health and Human Services interpreting Section 404.1578, which have guided the courts in this and other circuits for years in determining a widow's (or widower's, as in the instant case) eligibility for disability

---

2. Section 404.1578 provides as follows:
   **Section 404.1578 How we determine disability for widows, widowers and surviving divorced spouses.**
   (a) We will find that you are disabled and pay you widow's or widower's benefits as a widow, widower, or surviving divorced spouse if—
   (1) Your impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any impairment shown there;
   (2) Your impairment(s) meets the duration requirement.
   (b) However, even, [sic] if you meet the requirements in paragraphs (a)(1) and (2) of this section, we will not find you disabled if you are doing substantial gainful activity.
   20 C.F.R. Section 404.1578 (1989).

benefits under 42 U.S.C. Section 423(d)(2)(B).

## III. DISCUSSION

■ This Court's analysis must begin with that statute. Section 423(d) provides, in pertinent part, as follows:

**Section 423. Disability insurance benefit payments**

\* \* \* \* \* \*

**(d) Disability**

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...

\* \* \* \* \* \*

(2) For purposes of paragraph (1)(A)—

(A) An individual (except a widow, surviving divorced wife, widower, or surviving divorced husband for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, *considering his age, education, and work experience*, engage in any other kind of *substantial* gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to an individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) A widow, surviving divorced wife, widower, or surviving divorced husband shall not be determined to be under a disability (for purposes of sec-

tion 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which *under regulations prescribed by the Secretary* is deemed to be sufficient to preclude an individual from engaging in *any gainful activity*.

\* \* \* \* \* \*

42 U.S.C. Section 423(d)(1)(A), (2)(A)–(B) (Emphasis added).

■ The statute itself thus sets out different standards for "disability" that the applicant must meet, depending upon whether the applicant is seeking disability benefits as a wage earner or, as in the instant case, as a widower seeking benefits under 42 U.S.C. Section 402(e) or (f). The first difference discernible from the statute itself is that disability will be determined for a widower without regard to his age, education, and work experience. *Dorton v. Heckler*, 789 F.2d 363, 365 (6th Cir.1986). Second, in order to be found disabled, a widower must demonstrate that his impairments are so severe as to preclude his performing "any gainful activity," as opposed to any "substantial gainful work" in the case of a wage earner. *Id.* "It is well established that a widow must satisfy a stricter standard of disability than a wage earner." *Id.*

The statute, 42 U.S.C. Section 423(d)(2)(B), specifically delegated to the Secretary the authority to prescribe regulations which determine whether a physical or mental impairment is of such severity as to preclude the widower from engaging in "any gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2302, 96 L.Ed.2d 119 (1987) (Blackmun, J., dissenting). Pursuant to this statute, the Secretary has adopted 20 C.F.R. 404.1525, which provides, in pertinent part:

**Section 404.1525 Listing of impairments in Appendix 1.**

(a) *Purpose of the Listing of Impairments.* The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing *any gainful activity*. Most of the

listed impairments are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months.

\* \* \* \* \* \*

20 C.F.R. 404.1525(a) (Emphasis added).

"An individual cannot qualify for widow's disability benefits unless specific clinical findings show that she suffers from one of these impairments [in the Listing of Impairments] or that she suffers from one or more *unlisted impairments* that singly or in combination are the *medical equivalent* of a listed impairment." *Dorton,* 789 F.2d, at 365 (citing 20 C.F.R. 404.1578; *Price v. Heckler,* 767 F.2d 281 (6th Cir. 1985)) (Emphasis added).

In the present case, the ALJ examined each of the Plaintiff's impairments with respect to the Listed Impairments, and made a specific factual determination that the Plaintiff's impairments, both when considered alone and when considered together, do not meet or equal any of the listed impairments. In particular, the ALJ analyzed the Plaintiff's chronic headache symptoms with regard to Listed Impairment 11.01 (neurological); the Plaintiff's knee injury with respect to Listed Impairment 1.03 (arthritis of a major weight-bearing joint); the Plaintiff's back problems with respect to Listed Impairment 1.05 (disorders of the spine); and the Plaintiff's

hypertension with respect to Listed Impairment 4.00(C).

In addition, the ALJ noted that there was no clinical evidence to support the Plaintiff's complaint of psychological impairments, as the Plaintiff had never been treated for psychological disorders. (See Transcript, p. 47). As apparently conceded by the Plaintiff, each of the ALJ's findings with regard to the Listed Impairments is supported by substantial medical evidence. Accordingly, the ALJ's finding of no disability was reached in accordance with regulation 404.1578.

## A. *Validity of the Regulations*

As noted above, the Plaintiff takes issue not with the correctness of the ALJ's application of the regulation, but rather with the validity of the regulation itself. The Plaintiff's argument is essentially that the ALJ should not have relied exclusively on the Listed Impairments to determine whether the Plaintiff is precluded from engaging in any gainful activity. He argues that the ALJ should have considered also the Plaintiff's testimony concerning his subjective complaints of pain, and the physical limitations that such pain places on his daily activities.

In the cases relied upon by the Plaintiff, the courts did indeed question the validity of 20 C.F.R. Section 404.1578, particularly as applied by the Secretary pursuant to Social Security Ruling 83–19.[3] *See, e.g.,*

---

**3.** Soc.Sec.Rep.Serv. (West), Rulings, 1989 Supp., p. 90.

In this Social Security Ruling, the Secretary describes in some detail how the Listed Impairments are to be used to determine whether a particular individual is disabled based upon the Listed Impairments alone.

First, under the Ruling, to meet any one of the Listed Impairments, the social security claimant must establish that his symptoms match the individual medical criteria set out in that particular Listed Impairment. It is not enough that the claimant has received a doctor's diagnosis that he suffers from a particular disease or condition that has the same name as a particular Listed Impairment (e.g., Listed Impairment 11.00(A), "Convulsive disorders"). *Id.,* at 91. Thus, a person will not be deemed to meet a particular Listed Impairment unless he has documented that he suffers from all of the

symptoms required by one of the Listed Impairments to the degree of severity required by that Listed Impairment.

Second, if the claimant cannot establish that he directly "meets" each of the medical criteria for a particular Listed Impairment, the claimant can still satisfy one of the Listed Impairments if he can establish that his own medically ascertainable symptoms are *equivalent* to one of the Listed Impairments. Under the Ruling, this equivalence can be shown in one of three ways. First, the claimant who meets most but not all of the medical criteria for a particular Listed Impairment can show that some other clinical medical evidence of the ailment, equal or greater in severity to the missing medical criterion, is present. Second, if the claimant suffers from a condition or ailment which itself is missing from the Listed Impairments, the claimant can still meet the Listed Impairments by showing

*Kier v. Sullivan*, 888 F.2d 244, 247 (2d Cir.1989); *Hudson v. Sullivan*, 717 F.Supp. 340, 349–350 (W.D.Pa.1989); *Marcus v. Bowen*, 696 F.Supp. 364, 379–380 (N.D.Ill.1988). *See also Cassas v. Secretary of Health and Human Services*, 893 F.2d 454 (1st Cir.1990) (follows *Kier*). Those courts have, at least implicitly, held 404.1578 invalid because the Secretary's determination of a particular individual's ability to engage in any gainful activity cannot be measured by his equivalence to the listed impairments alone. The reasoning of these Courts is best amplified by the opinion of the district court in the *Marcus* case:

> In determining whether a spousal or child claimant is disabled, however, the Secretary circumvents his statutory duty to determine the level of severity. The medical criteria of the Listings, as we have seen, were not intended to be used to deny claims but only to screen out clearly disabled individuals. By the Secretary's own admissions, it is clear that the Listings do not cover all medical conditions and impairments, do not measure the combined effect and impact of the claimant's impairments, and indeed do not make the more individualized inquiries into the full array of signs, symptoms and findings *for the listed impairments* [emphasis in original] to get a realistic evaluation of a person's ability to work.

> \* \* \* \* \* \*

> While the Listings identify medical conditions that allow the Secretary to deem the individual unable to work, they do not conclusively measure the extent to which an individual is impaired. Even where the claimant suffers from conditions which are depicted by the Listings, *a full understanding of the extent of impairment may require an individualized determination.* Where an impairment is not listed, it is even more difficult to see the Listings criteria as dispositive of severity level since the evaluation of medical impairments involves particularized understandings of how medical conditions impair bodily functions and often cannot be translated into the limited clinical indicia of other impairments.

*Marcus*, 696 F.Supp., at 378 (Emphasis added).

As reflected in the above quote, the courts have essentially found the Secretary's reliance on the Listings wanting in two respects: 1) the Listed Impairments form an incomplete list, and many impairments which would otherwise render an individual incapable of engaging in "any gainful activity" are absent from the list [4];

---

from medical clinical evidence that he has symptoms which are equal to or greater than each of the respective medical criteria for the most closely analogous Listed Impairment. Here, again, each of the medical criteria of a specific Listed Impairment must be met with clinical evidence of analogous symptoms of equal or greater severity. Third, a claimant can satisfy one of the Listed Impairments if he suffers from various conditions or disorders the symptoms of which, taken together, satisfy every one of the medical criteria for one of the Listed Impairments. *Id.*, at 92.

Most significantly, the Ruling states most emphatically that the claimant cannot satisfy the Listed Impairments merely by showing that his actual physical limitations ("Residual Functioning Capacity," or "RFC") are the same as they would be if he actually suffered from one of the Listed Impairments:

> As in determining whether the listing is met, it is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding—no matter to what extent that finding may exceed the listed value.

> The mere accumulation of a number of impairments *also will not establish medical equivalence.* When an individual suffers from a combination of unrelated impairments, the medical findings of the combined impairments will be compared to the findings of the listed impairment most similar to the individual's most severe impairment. The functional consequences of the impairments (i.e., RFC), irrespective of their nature or extent, *cannot* justify a determination of equivalence.

*Id.*, at 92–93 (emphasis in original).

4. *Id.*, 696 F.Supp. at 373–376; *Kier*, 888 F.2d, at 247 ("This underinclusive catalog of impairments only establishes the level of severity necessary to demonstrate disability, rather than comprises the entire universe of available claims.").

and 2) even with respect to specific types of impairments that are among the Listed Impairments, the Listed Impairments fail to take adequate account of how particular symptoms may affect a particular individual's ability to work. *See also Hudson,* 717 F.Supp., at 350–351.

This Court rejects each of these premises for invalidating this long-standing regulatory scheme—at least with regard to the facts before it in the instant case. The Court will address each in turn.

### 1. The Underinclusiveness of the Listed Impairments

The thrust of the first argument is that the Listed Impairments (which lists approximately 125 ailments and injuries) does not and cannot possibly include all impairments that are likely to preclude an individual from engaging in any gainful activity. For example, the court in the *Marcus* case listed multiple sclerosis, narcolepsy, arthritis in multiple hand joints, ankle arthritis, pulmonary vascular disease, and heart disease as impairments either overlooked or inadequately addressed in the Listed Impairments. *Marcus,* at 375–376. While it may be that those specific ailments are indeed absent from the Listed Impairments, this Court cannot determine on the basis of the facts presently before it whether such impairments would render a particular individual unable to engage in *any* gainful activity.

In the present case, the Plaintiff suffered from particular impairments which are addressed in the Listed Impairments. Based on the record before it, this Court will not conclude that the Listed Impairments, as a means for determining whether an individual can engage in any gainful activity, is underinclusive. It may be that the impairments discussed by the court in the *Marcus* case would not so severely affect an individual's working capacity so as to render him unable to engage in any gainful activity.

**5.** This Court harbors serious doubts about the *Marcus* court's determination that the list is underinclusive since that determination was made in the context of a class action, and no

As noted above, this determination has been entrusted by Congress to the Secretary's rule-making authority by 42 U.S.C. Section 423(d)(2)(B). In the absence of a specific showing that this Plaintiff suffers from an impairment that is not in the Listed Impairments, and that this unlisted impairment precludes this Plaintiff from engaging in any gainful activity, this Court will not invalidate the Secretary's reliance on the Listed Impairments based upon some hypothetical case not before it.[5]

### 2. The Listed Impairments' Failure to Take Into Consideration Individualized Assessments of Residual Functioning Capacity

As to the second argument, the courts seem to assume that there is a "level of impairment" objectively determinable in the world at large that precludes an individual from engaging in "any gainful activity" and that exists independently of the Secretary's Listed Impairments. *See, e.g., Hudson,* 717 F.Supp., at 350–351.

Under Section 404.1578, as interpreted in SSR 83–19, in order for a widower claimant to establish that he is not able to engage in "any substantial activity" for the purposes of 42 U.S.C. Section 423(d)(2)(B), the widower must establish that his impairment meets or equals the requirements of a Listed Impairment, *based on medical evidence alone,* and any proof that the widower suffers from some other impairment that is so severe that he is unable to perform any physical tasks at all will be disregarded by the Secretary entirely unless his medical symptoms match or equal those required under a specific Listed Impairment. Even if the individual suffers from one specific symptom that satisfies one of the elements of one of the Listed Impairments, and this symptom is so severe as to preclude any physical activity at all, the widower still will not be found disabled under SSR 83–19. *Id.*

concrete determination was made that any particular individual's impairment did not come within one of the Listed Impairments.

The *Hudson* court overturned the Secretary's regulatory scheme as "arbitrary and capricious":

As previously stated, we cannot overturn a legislative rule unless the ruling is arbitrary and capricious. We find that the Secretary's decision to limit consideration of plaintiff's functional limitations to those contained in a Listed Impairment is arbitrary and capricious as inconsistent with the purposes of the Act. The purpose of the Act is to provide benefits to individuals who are unable to work due to disability; failure to consider plaintiff's functional limitations runs counter to this purpose. *See Marcus v. Bowen*, 696 F.Supp. 364, 379–80 (N.D.Ill. 1988); *see also Zebley* [by Zebley v. Bowen], 855 F.2d [67], 72–77 [ (3rd Cir.1988) ]. Consequently, we hold that the ruling [SSR–83–19] violates the Act.

*Id.*

The Court rejects this reasoning, at least to the extent that the Plaintiff would have the Court invalidate the regulatory scheme in the instant case. First of all, the Court notes that the Plaintiff in the instant case certainly had, at the time of the hearing before the ALJ, the ability to engage in a wide range of physical activities. The Plaintiff lived alone and was able to take care of his personal needs, including household chores such as vacuuming, washing windows, doing dishes, and making his bed. (Transcript, pp. 33, 45, 83). The Plaintiff's walking was unimpaired, with no need for an assistance device. (Transcript, pp. 113–114). The Plaintiff engaged in some fishing and deer hunting. (Transcript, p. 32). The Plaintiff could drive for an hour or two at a time, but then he had to stop at a rest stop to walk his dog and "get some exercise and refresh myself." (Transcript, p. 35). The Plaintiff could also carry firewood into the house, with some limitations on bending. (Transcript, p. 40). Thus, the record in the instant case cannot lead the Court to conclude that the regulatory scheme unfairly prevented the Plaintiff in the instant case from demonstrating that his impairments precluded him from engaging in "any gainful activity."

■ Secondly and more importantly, the Court disagrees with the *Hudson* court's apparent assumption that the term "any gainful activity" can be defined by the courts independently of the regulations promulgated by the Secretary. It appears to this Court, from the language of the statute, that Congress, at least implicitly, authorized the Secretary to define "any gainful activity" when it authorized the Secretary to prescribe regulations that determine what level of severity the claimant's impairments must meet before they will be "deemed" to preclude any gainful activity. The operative portion of the statute which defines "disability" in the case of widows and widowers provides as follows:

**Section 423. Disability insurance benefit payments**

    \*    \*    \*    \*    \*    \*

**(d) Disability**

    \*    \*    \*    \*    \*    \*

(2) For purposes of paragraph (1)(A)—

    \*    \*    \*    \*    \*    \*

(B) A widow, surviving divorced wife, widower, or surviving divorced husband shall not be determined to be under a disability ... unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is *deemed* to be sufficient to preclude an individual from engaging in any gainful activity.

    \*    \*    \*    \*    \*    \*

42 U.S.C. Section 423(d)(2)(B) (Emphasis added).

To this Court, the statute's use of the term "deemed" is extremely important in that it indicates Congress' intent to allow the Secretary to define the ultimate term, "any gainful activity." By determining what level of impairments shall be "deemed" sufficient to preclude any gainful activity, the Secretary will, as a result, necessarily define "any gainful activity." This court believes that the *Hudson* court incorrectly assumed that the term "any gainful activity" creates a statutory yardstick by which the *courts* can independent-

ly measure the Secretary's regulations concerning the required "level of severity" that social security claimants' impairments must reach. *See also Marcus*, 696 F.Supp., at 376–377 (footnote 15).[6]

It is interesting to note that the *Marcus* court, in a previous decision, construed 42 U.S.C. Section 423(d)(2)(B) exactly the way this Court now does:

> In this provision [42 U.S.C. Section 423(d)(2)(B) ] Congress defined the requisite level of severity *by reference to regulations and not to the present functional abilities of the individual claimant.* The test of disability is not whether the particular claimant is able to work but rather whether "an individual" could engage in gainful activity while having the claimant's impairments. According to the legislative history the test for disability outlined in this provision was intended to be "more restrictive than that for disabled workers and childhood disability beneficiaries." Senate Report, *supra.* 1967 U.S.Code Cong. & Ad.News. at 2883. Unlike the test applicable to plaintiff "the determination of disability [is] based *solely on the level of severity of the impairments." Id.*

*Hundrieser v. Heckler*, 582 F.Supp. 1231, 1237 (N.D.Ill.1984) (Emphasis added).

This Court agrees with the district court's analysis in *Hundrieser*, and rejects that same judge's reasoning in *Marcus* wherein the court specifically disavowed the above quoted language in *Hundrieser*. *See Marcus*, 696 F.Supp., at 380 n. 21. Specifically, this Court finds unconvincing the *Marcus* court's interpretation of the "deeming" language in the statute. In *Marcus*, the court stated (without any citation to the legislative history or any other authority):

> The rationale behind the statute's "deeming" provision is perhaps related

to the Secretary's disability determination practices at the time the spousal program was enacted. In the days before the grid the Secretary used vocational testimony that identified actual job types which wage earner claimants could perform. Congress' express delegation of authority to the Secretary to establish regulations by which spousal claimants could be deemed disabled was intended to allow the Secretary to determine spouse benefits without vocational testimony. It did not intend to relieve the Secretary of his duty to determine the [individual] spouse's level of impairment. *Id.* (footnote 22).

This Court finds this explanation of Congressional intent unsatisfactory for two reasons. First, the *Marcus* court completely overlooked the legislative history from which it quoted in the *Hundrieser* case (and quoted above) which indicates that Congress intended disability in the case of widows and widowers to be based solely on the "level of severity" of the impairment, rather than on the specific claimant's ability to perform work. Specifically, the Senate Report accompanying the 1968 amendments to the Social Security Act, which added 42 U.S.C. Section 423(d)(2)(B), states as follows:

> The bill would also provide benefits (as discussed in the statement on benefits for disabled widows and widowers) for certain disabled widows (including surviving divorced wives) and disabled dependent widowers under a test of disability that is somewhat more restrictive than that for disabled workers and childhood disability beneficiaries. The determination of disability in the case of a widow or widower would be based solely on the *level of severity of the impairment.* Determinations in disabled widow and widower cases would be made without regard to nonmedical factors such as

---

**6.** "To the extent that the regulations purport to deny disability to claimants whose functional limitations are of a level of severity which precludes gainful activity, we believe they exceed the Secretary's statutory authority and are arbitrary and capricious. Courts are, however, customarily called upon to review the denial of a specific claim. If the claim has been denied solely by reference to the Listings and without any determination of whether the claimant's functional limitations are of a level of severity which precludes gainful activity, the denial is not supported by substantial evidence. We discuss the issues here in that context while recognizing that we are considering what we believe to be an overly truncated methodology." *Id.*

age, education, and work experience, which are considered in disabled worker cases. Under this test, the Secretary of Health, Education, and Welfare would *by regulation establish the severity of impairment which may be deemed to preclude an individual from engaging in any "substantial gainful activity"* (as opposed to "gainful activity" as provided in the House bill).[7] An individual whose impairments meet the *level of severity established by the regulations of the Secretary* would generally be found to be disabled, although, of course, if other evidence establishes ability to engage in substantial gainful activity despite such impairments, he would not be found disabled; and *individuals whose impairments do not meet this level of severity may not in any case be found disabled.*

S.Rep. No. 744, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Admin. News 2834, 2883 (emphasis added).

The emphasized portion of the Senate Report clearly indicates the legislative intent to delegate to the Secretary the authority to issue regulations that establish the "level of severity" of impairments that widows and widowers must meet under new Section 423(d)(2)(B). It is perhaps unclear from this passage, considered in isolation, what Congress meant by "level of severity." However, the immediately proceeding portion of the Senate Report (discussing worker disability claims) used the same phrase, "level of severity," as follows:

The impairment which is the basis for the disability must result from anatomical, physiological, or psychological abnormalities which can be shown to exist through the use of medically acceptable clinical and laboratory diagnostic techniques. Statements of the applicant or conclusions by others with respect to the nature or extent of impairment or disability do not establish the existence of disability for purposes of social security benefits based on disability unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions. In most cases the decision that an individual is disabled can be made solely on the basis of an impairment, or impairments, which are of a *level of severity presumed (under administrative rules)* to be sufficient so that, in the absence of an actual demonstration of ability to engage in substantial gainful activity, it may be presumed that the person is unable to so engage because of the impairment or impairments.

*Id.,* 1967 Cong.Code & Admin. News, at 2882–2883.

It is clear to the Court that, in this passage, Congress understood the "administrative rules" governing "level of severity" to refer to the regulatory framework that existed at that time, specifically, 20 C.F.R. Section 404.1502(a).[8] At the time, Section

7. As enacted, 42 U.S.C. Section 423(d)(2)(B) adopts the House version, "any gainful activity," rather than the "substantial gainful activity" standard referred to in the Senate Report.

8. 20 C.F.R. Section 404.1502(a), since superseded by the Listing of Impairments, read as follows at the time of the Senate Report:

**Section 404.1502  Evaluating disability.**

(a) Whether or not an impairment in a particular case constitutes a disability, as defined in Section 404.1501(a) and (b)(1) is determined from all the facts of that case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given to such other factors as the individual's age, education, training and work experience. However, medical considerations alone may justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight abandonment of sight or hearing, or similar abnormality or combination of abnormalities. Also, medical considerations alone (including the physiological and psychological manifestations of aging) may justify a finding that the individual is under a disability where his impairment is one, as shown by the following examples, which would ordinarily be considered as preventing substantial gainful activity, except where other evidence rebuts a finding of "disability," e.g., the individual is actually engaging in substantial gainful activity. Examples of such impairments are:

(1) Loss of the use of two limbs.

(2) Certain progressive diseases which have resulted in the physical loss or atrophy of a limb, such as diabetes, multiple sclerosis, or Buerger's disease ...

20 C.F.R. Section 404.1502(a) (superseded).

404.1502(a) itself contained a listing of nine specific impairments which "would ordinarily be considered as preventing substantial gainful activity." Subsequent to the 1968 amendments to 42 U.S.C. Section 423, Section 404.1502(a) was amended to incorporate the Listing of Impairments.

The Senate Report's use of the same phrase, "level of severity," on the same page with respect to widow's disability benefits leads the Court to conclude that Congress specifically contemplated and intended that the Secretary would apply the same or a similar list of impairments to deny benefits to widows and widowers without regard to other evidence of their functional limitations. Therefore, the legislative history supports the Secretary's present interpretation of 42 U.S.C. Section 423(d)(1)(B), as applied by 20 C.F.R. Section 404.1578 and SSR 83–19.

Second, the practical result of the *Marcus* case is that the ALJ would be required henceforth to complete the very same 5–step evaluation process for widows and widowers that is currently used for wage earner claimants (rather than stopping at step 3, as is currently the practice in this Circuit).[9] Indeed, the Plaintiff in the instant case argues that the ALJ below should have completed the 5–step sequential evaluation process. This result would obliterate the distinction between widow claimants and ordinary wage earner claimants, despite the fact that Congress, as evidenced by the legislative history, intended the disability test for widows and widowers to be more restrictive than that for disabled wage earners.

Furthermore, if this Court were to invalidate the Secretary's reliance on the Listed Impairments, there would remain no substantive standards available to the Secretary to determine whether a particular claimant is able to engage in "any gainful work." In the case of wage earners, 42 U.S.C. Section 423(d)(2)(A) provides a specific framework to determine whether the former wage earner can engage in "substantial gainful activity." From this statutory framework, the Secretary has developed a grid, based upon nationwide vocational statistics, by which the ALJ can determine whether there is a significant number of jobs existing in the national economy that a particular claimant could perform, considering his impairment, age, education, and prior work experience. The Court observes that "any gainful activity" has not received any such definition in either the statute or in any regulation, at least not apart from the Secretary's Listed Impairments.[10]

Even if this Court were to adopt its own definition of "any gainful activity," which incorporates, as the Plaintiff insists it

---

**9.** The five-step evaluation process is as follows:
    1. An individual who is working and engaging in substantial gainful activity will not be found to be disabled regardless of medical findings. 20 C.F.R. Section 404.1520(b).
    2. An individual who does not have a "severe" impairment will not be found to be disabled. 20 C.F.R. Section 1520(c).
    3. An individual who is not working and is suffering from a *severe* impairment which meets the duration requirement and which meets or equals one of the Listed Impairments will be found to be disabled without consideration of vocational factors. 20 C.F.R. Section 404.1520(d). In the case of widows and widowers, if the individual does not suffer from an impairment which meets or equals one of the Listed Impairments, he will be found not disabled, and the inquiry ends at this step of the analysis. 20 C.F.R. Section 404.1578(a)(c).
    4. If an individual is capable of performing work he has done in the past, a finding of not disabled must be made. 20 C.F.R. Section 404.-1520(e).

    5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functioning capacity must be considered to determine if other work can be performed. 20 C.F.R. Section 404.-1520(f).

**10.** One court has interpreted "any gainful activity" under 20 C.F.R. Section 404.1572(b). *Helms v. Heckler,* 572 F.Supp. 259, 261 (W.D.N.C.1983). However, that court's resort to Section 404.-1572(b) was incorrect because that regulation defines "gainful work activity," not "any gainful activity." "Gainful work activity" is a term adopted by the Secretary to describe one component of "substantial gainful activity" (the other component being "substantial work activity"), for the purposes of determining disability in the case of wage earners, not widows and widowers. "Any gainful activity" is and was then defined only in 20 C.F.R. Section 404.1525(a), with reference to the Listing of Impairments.

/

must, the claimant's residual functional capacity to perform work, the Secretary's application of such a definition in specific cases would again necessitate the ALJ's reliance on vocational testimony because there must be some form of substantial evidence to support the ALJ's conclusion in a specific case that the individual could or could not perform work. Ironically, the *Marcus* court's interpretation of Section 423(d)(2)(B) would require the renewed use of vocational testimony in administrative hearings when the *Marcus* court itself relied on Congress' supposed intent to avoid the need for such vocational testimony to reject the Secretary's interpretation of Section 423(d)(2)(B) in the first instance. *See Marcus*, 696 F.Supp., at 380 n. 22.

The Court finds that the Secretary's reliance on the Listed Impairments, as provided in 20 C.F.R. Section 400.1578, and SSR 83–19, is consistent with the plain language of the statute, 42 U.S.C. Section 423(d)(2)(B), and the legislative history, as analyzed above. In so holding, the Court notes that the Secretary's use of the Listed Impairments is a longstanding practice and has received repeated approval by the Court of Appeals for the Sixth Circuit, although the validity of Section 404.1578 and SSR 83–19 has never been challenged directly in the Court of Appeals as it has been challenged today. *See Dorton v. Heckler*, 789 F.2d 363 (6th Cir.1986); *Wokojance v. Weinburger*, 513 F.2d 210 (6th Cir.1975), *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 82 (1975).

B. *Compatibility of This Court's Decision With Supreme Court Precedents*

The Court's decision today is consistent with the Supreme Court's recent decisions in *Sullivan v. Zebley*, —— U.S. ——, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) and *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In the *Zebley* case, the Supreme Court held that the Secretary's exclusive reliance on the Listed Impairments to determine disability in the case of *children* seeking benefits under the Supplemental Security Income Program (SSI) was invalid because it contradicted

the language of the statute which defines "disability" in the case of children. That statute, 42 U.S.C. Section 1382c(a)(3)(A), provides as follows:

**Section 1382c. Definitions**

\*        \*        \*        \*        \*        \*

(a)(3)(A) An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any *substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of *comparable severity*).

\*        \*        \*        \*        \*        \*

42 U.S.C. Section 1382c(a)(3)(A) (Emphasis added).

The Court held that the Secretary's reliance on the Listed Impairments, denying benefits to children at stage 3 of the 5–step evaluation process, is inconsistent with Section 1382c(a)(3)(A) because that statute defines disability in the case of children as an impairment of "comparable severity" to an impairment that would render an adult disabled under the SSI program. *Zebley*, 110 S.Ct., at 894–895. In the case of adults, evaluation of disability proceeds to the fourth step (whether the adult is still able to perform past work) and fifth step (whether the adult can still perform other jobs that exist in significant numbers in the national economy) of the evaluation process. 20 C.F.R. Section 416.920(e), (f). "The Secretary's regulations, treating child-disability claims like claims for widows' benefits, nullify this Congressional choice [to link child disability benefits to the more liberal test set forth in Section 423(d)(2)(A) for wage earners]." *Zebley*, 110 S.Ct., at 895.

In analyzing the child benefit regulations, however, the Court specifically recognized that the widows' statutory test of disability, unlike the children's test for dis-

ability, is more restrictive than that for disabled wage earners. *Id.*

Finally, this Court adds that the child disability statute, Section 1382c(a)(3)(A), does not specifically authorize the Secretary to promulgate regulations defining the level of severity that will be deemed to preclude any gainful activity, as does Section 423(d)(2)(B) with respect to widows.

In *Yuckert,* the Supreme Court upheld the Secretary's use of the "severity" regulation, 20 C.F.R. Section 404.1520(c), which allows the Secretary to deny benefits at stage 2 of the 5–step evaluation process solely on the basis of medical evidence, in the case of wage earner claimants. In that case, the Court held that the severity regulation did not conflict with the statutory definition of disability in 42 U.S.C. Section 423(d)(2)(A) even though the statute states that "an individual ... shall be determined to be under a disability only if his physical impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work ..." *Yuckert,* 107 S.Ct., at 2294. The Court rejected the argument that the statute requires the Secretary always to consider a wage earner claimant's age, education, and work experience, as a threshold matter, before benefits can be denied. *Id.* "The words of this [statutory] provision limit the Secretary's authority to *grant* disability benefits, not to *deny* them." *Id.* (Emphasis added).

Although the dissent in the *Yuckert* case argued that the statutory framework required an "individualized assessment" of the wage earner's residual functional capacity in every instance before benefits could be denied,[11] the majority rejected the dissent's argument that an individualized determination is required in every instance, even for wage earners:

> We have recognized that other aspects of the Secretary's sequential evaluation process contribute to the uniformity and efficiency of disability determinations. The need for such an evaluation process is particularly acute because the Secretary decides more than 2 million claims for disability benefits each year, of which more than 200,000 are reviewed by administrative law judges. The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.

*Id.,* at 2297.

Even the dissent in the *Yuckert* case recognized that an individualized determination of disability is *not* required in the case of widows and widowers:

> A comparison of this process to that set forth in paragraph (2)(B) [Section 423(d)(2)(B), relating to disability claims of widows and widowers] leaves no doubt whatsoever that consideration of the vocational factors is a key feature of the process in evaluating claims under paragraph (2)(A) [Section 423(d)(2)(A), relating to wage earner claims]. In paragraph (2)(B), *Congress authorized the Secretary to deny benefit claims by surviving spouses based on medical evidence alone. That paragraph specifies that the Secretary may promulgate listed severity levels of impairments at which an individual cannot engage in any gainful activity, and may deny benefits in such cases simply by com-*

---

**11.** "The Section 423(d)(2)(A) inquiry furthers the purpose of the disability-benefits program by ensuring an individualized assessment of alleged disability in cases of insured workers. The inquiry takes into account the fact that the same medically determinable impairment affects persons with different vocational characteristics differently. A relatively young, well educated, and experienced individual who can no longer perform his past work due to a medical impairment may be able to transfer his skills to another job and perform substantial gainful work. That same medical impairment may have a much greater effect·on a person's ability to perform substantial gainful work if the person is of advanced age and has minimal education and limited work experience. Thus, a particular medical impairment may not be disabling for the first individual while it could be for the second."

*Id.,* at 2303 (Blackmun, J., dissenting).

*parison to this list.* If Congress had intended to authorize the Secretary to deny benefits in that same manner in disability claims under paragraph (2)(A), without consideration of age, education, or work experience, it would have included the same language in paragraph (2)(A) that it used in paragraph (2)(B).

*Id.*, at 2302–2303 (Blackmun, J., dissenting).

### C. *Substantial Evidence*

 As an alternative grounds for its holding today, the Court finds that substantial evidence on the record supported the ALJ's ultimate determination that the Plaintiff was not disabled. *Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir.1989). The large scope of the activities which the Plaintiff testified he was able to perform at the time of the hearing before the ALJ (i.e., vacuuming, washing windows, doing dishes, making his bed, walking unimpaired with no need for an assistance device, fishing, deer hunting, driving for an hour or two at a time, stopping to walk his dog and to get some exercise and refresh himself, and carrying firewood)[12] is utterly inconsistent with a finding that his impairments preclude him from engaging in "any gainful activity," no matter what definition of "any gainful activity" the Court would construct, if Congress had called upon it—instead of the Secretary—to formulate the definition.

### IV. Conclusion

In summary, the Court concludes that substantial evidence supported the ALJ's determination that the Plaintiff was not disabled. Further, the Court concludes that 20 C.F.R. Section 404.1578(a), as interpreted by SSR 83–19 and as applied to the facts of this case, is not inconsistent with 42 U.S.C. Section 423(d)(2)(B), does not exceed the Secretary's statutory authority, and is not "arbitrary and capricious." Accordingly, based upon the record in the instant case, the Court cannot conclude that the Secretary's regulatory scheme is invalid. *Yuckert,* 107 S.Ct., at 2293.

**12.** See Transcript, pp. 32–33, 35, 40, 45, 83, 113–114.

Accordingly, the Plaintiff's motion for summary judgment is DENIED, and the Defendant's motion for summary judgment is GRANTED. Because the Court's decision today conflicts with Magistrate Pepe's Report and Recommendation, the Report and Recommendation is rejected.

LET JUDGMENT BE ENTERED ACCORDINGLY.